FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for Jeffer-
son Bank & Trust, Plaintiff,

v.

REFCO GROUP, LTD., Refco, Inc., Refco
Capital Corporation, Refco Securities,
Inc., and Kimberly Goodman, Defen-
dants.

No. Civ.A. 93–K–85.

United States District Court,
D. Colorado.

Jan. 20, 1999.

As Corrected March 31, 1999.

Craig B. Shaffer, S. Kirk Ingebretsen, Dufford & Brown, P.C., Denver, CO, for plaintiff.

Edward W. Stern, Parcel, Mauro, & Spaanstra, P.C., Denver, CO, Jack Weinberg, Graubard, Mollen & Miller, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER ON MOTIONS IN LIMINE

KANE, Senior District Judge.

The Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Jefferson Bank & Trust ("JBT"), pursues this action against Refco Group, Ltd., Refco, Inc., Refco Capital Corporation, Refco Securities, Inc. (collectively "Refco"), and Kimberley Goodman.[1] FDIC seeks actual and punitive damages, allegedly arising from Defendants' conduct and that of certain of their employees or agents during the period December 1989 through December 1991 resulting in substantial losses to and the ultimate failure of JBT.

FDIC's remaining claims[2] are against all Defendants for violation of § 18–17–104(3) of the Colorado Organized Crime Control Act ("COCCA"), violation of section 18–17–104(4) of COCCA, civil conspiracy, conspiring to commit or aiding and abetting false representations, false representations, conspiring to commit or aiding and abetting fraudulent concealment, fraudulent concealment, conspiring to commit and aiding and abetting breach of fiduciary duty, and breach of fiduciary duty; against all Defendants except Goodman for breach of contract; and against Refco for violation of §§ 11–51–125(3) and 11–51–604(4) of the Colorado Securities Act. In its answer, Refco denies the allegations in the Third Amended Complaint and asserts thirteen affirmative defenses. No counsel has formally entered an appearance on behalf of Goodman and she has not filed an answer to the Third Amended Complaint. Jurisdiction is based on diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

### I. *Procedural Status.*

The parties submitted a lengthy proposed Amended Pretrial Order in which the length of trial was estimated by counsel for FDIC to be 30 court days and by counsel for Refco to be 90 court days. At a pretrial conference I rejected the proposed order, advised the parties that I intended to appoint the court's own experts in each field in which an expert was listed by either or both sides, and gave each side ten days within which to file suggestions as to who should be appointed as the court's expert witnesses. Thereafter, Refco moved for a hearing on the appointment of experts. At the hearing, counsel for Refco suggested that the case was not expert intensive and that another way of paring down the case would be for the parties to file motions in limine in advance of trial to resolve certain issues outlined in the proposed Amended Pretrial Order. I vacated the order on the appointment of expert witnesses, ordered the parties to brief the motions in limine, and said I would reconsider the need to appoint the experts after ruling on those motions.

FDIC's pending motions in limine seek (1) to exclude evidence relating to the 1993 crim-

---

1. JBT was a bank chartered under the laws of Colorado, with its principal place of business in Lakewood, Colorado. On July 2, 1993, FDIC was appointed Receiver for JBT. At all relevant times, Refco Securities, Inc. was a New York corporation registered as a broker-dealer by the Securities Exchange Commission, the New York Stock Exchange and the National Association of Securities Dealers; Refco Capital Corporation was a New York corporation in the business of providing financing for affiliated companies and their customers; Refco Group, Ltd. was a Delaware corporation and a holding company; and Refco, Inc. was a duly regulated futures commission merchant regulated by the Commodities Futures Trading Commission. In 1990 and 1991, Goodman was a registered representative of Ref-

co Securities, Inc. At various times Goodman was also employed by Refco, Inc. and Refco Capital Holdings, Inc., both subsidiaries of Refco Group Ltd. FDIC's claims against First Interstate Bank of Denver, N.A. were dismissed with prejudice on March 28, 1996.

2. FDIC' Fifth, Sixth, Seventh and Eighth Claims for Relief have been dismissed with prejudice. In addition, I granted Defendants' motion for summary judgment with respect to FDIC's Fifteenth and Sixteenth Claims for Relief. *See FDIC v. Refco Group, Ltd.*, 989 F.Supp. 1052, 1092 (D.Colo.1997) (detailing the factual background of the case and ruling, *inter alia*, on various summary judgment motions).

inal referral relating to Maurice Grotjohn and (2) to admit evidence of transactions between Refco and other Denman customers. Refco's motions in limine request me (1) to exclude evidence relating to the dealings between Refco, Inc., Refco Capital Corporation ("RCC"), Refco Securities, Inc. ("RSI") and any Wymer customer other than JBT; (2) to exclude evidence relating to events before JBT entered into its second management agreement with Denman and Co., dated December 7, 1989; (3) to exclude evidence relating to settlements of disputes between (a) the Securities and Exchange Commission and each of Refco, Inc., RCC, Douglas Blair and Robert Dantone, and (b) the Commodity Futures Trading Commission and Refco, Inc; (4) to exclude a criminal information filed against Kimberly Goodman on July 1, 1996, and any evidence relating to the criminal proceeding against Goodman; (5) to sever for trial FDIC's claims against Refco from its claims against Goodman; (6) to exclude evidence, including expert testimony, relating to alleged violations of securities statutes, rules, regulations and industry standards; (7) to exclude testimony by Plaintiff's purported expert witnesses, John Moye and Bernard Lubin; (8) to exclude expert testimony about the purported "knowledge" of Refco or JBT; and (9) to exclude the character and speculative testimony by FDIC's purported expert witness Ralph Mires.

I find oral argument would not be of material assistance and resolve the motions on the parties' briefs and supporting documents.

## II. *Merits of Motions in Limine.*

### A. *FDIC's Motion to Exclude Evidence Relating to the 1993 Criminal Referral Concerning Maurice Grotjohn.*

■ FDIC seeks an order excluding from trial any evidence of or reference to a 1993 Report of Apparent Crime relating to Maurice Grotjohn, former president of JBT. On October 21, 1993, FDIC forwarded to the United States Attorney for the District of Colorado and the Federal Bureau of Investigation a Report of Apparent Crime ("referral"), which alluded to "certain apparent irregularities" involving Maurice Grotjohn, former president of JBT, "which may constitute offenses under the Federal Criminal Statutes." The referral was prepared by Sam Worrell, an FDIC investigator assigned to the FDIC team responsible for closing JBT. A copy of Worrell's affidavit is attached to the motion in limine. In it, he states, in connection with the closing of JBT, the issue of whether its officers and directors were involved in any criminal wrongdoing was of secondary concern. If during the course of his civil investigation, he had "any suspicion" or "any inkling" of a criminal act, he was required to prepare a criminal referral, albeit on the basis of hearsay information. Although the referral lists three individuals who might have information concerning the suspected violation, Worrell states he personally interviewed only one of the three. No criminal charges have ever been brought against Grotjohn.

FDIC submits the referral should be excluded under Fed.R.Evid. 402 as irrelevant and under Fed.R.Evid. 403 in that its probative value, if any, is substantially outweighed by the danger of unfair prejudice. According to Refco, the referral is directly relevant to critical issues in the case as corroboration for Refco's assertion that JBT, through Grotjohn, acted in concert with Wymer, and not Refco. Refco claims the referral is also admissible under Rule Fed.R.Evid. 404(b) which allows evidence of other wrongs as proof of knowledge or intent. It maintains the statements in the referral that Grotjohn concealed his true relationship with Wymer and Ronlov and withheld documents relevant to the FDIC's investigation of JBT are probative of JBT's knowledge of the Wymer scheme and any intent to cover-up potential exposure for the scheme.

In addition, Refco states the referral is admissible as a party admission by the FDIC which is not hearsay under Fed.R.Evid. 801(d)(2). FDIC's position is that the referral does not qualify as an admission as it merely offers speculative opinions drawn from purportedly missing documents and "double hearsay" and contemplated that any formal evaluation of the suspicions would be undertaken by the United States Attorney's Office.

Notwithstanding that the criminal referral may be of limited probative value and may be

categorized as non-hearsay or a hearsay exception, taking into account its speculative nature and the lack of any actual criminal charges, I consider any probative value it may have to be outweighed by the risk of undue prejudice to FDIC and the potential for misleading the jury. *See* Fed.R.Evid. 403. Accordingly, I grant FDIC's motion to exclude any reference to the referral.

B. *FDIC's Motion to Admit and Refco's Motion to Exclude Evidence of Transactions between Refco Denman Customers other than JBT.*

█ FDIC seeks an order admitting evidence pertaining to transactions between other Denman customers and Refco as relevant to its claims alleging a conspiracy or common plan between Wymer and Refco to defraud Denman/ITM customers. Transactions in other Denman-customer accounts, FDIC asserts, are "inextricably intertwined" and part and parcel of the conspiracy and scheme to defraud. It also argues such transactions are admissible under Fed. R.Evid. 404(b) to prove knowledge and intent on the part of Refco.

Refco argues such evidence is irrelevant in that no act or omission of Refco vis-a-vis any other Wymer customer had any effect on JBT's decision to do business with Wymer, its conduct in sending funds to accounts identified by Wymer, or its failure to examine the statements of account which it received from RSI and compare them with the performance reviews it received from Wymer for the same periods. Nor, Refco asserts, did any such act or omission affect or cause FDIC's loss. To the extent that FDIC asserts evidence of any such dealings shows a pattern or enterprise under COCCA, Refco maintains it is merely cumulative of similar dealings between JBT and the Refco entities. It states, moreover, admitting such evidence, would necessitate exploring the scope of authority which each such other customer granted to Wymer, inordinately lengthening the trial, confusing the jury, and resulting in unfair prejudice to Refco.

FDIC claims the existence of a fraudulent scheme involving conspiracy, commingling, and improper diversion of funds to third party accounts. Evidence of transactions between Refco and other Denman customers is relevant to the extent in that it might bear on the existence and perpetuation of Wymer's scheme and constitute circumstantial proof of Refco's knowledge thereof. *See United States v. Krout,* 66 F.3d 1420, 1431 (5th Cir.1995) ("evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic evidence"); *Martinez v. Winner,* 548 F.Supp. 278, 324 (D.Colo.1982) (holding a conspiracy may be implied by a course of conduct or other circumstantial evidence), *modified in part,* 771 F.2d 424 (10th Cir.1985), *on remand,* 800 F.2d 230 (10th Cir.1986). FDIC states it intends to introduce the evidence of transactions with other Denman customers through Refco's own records and to describe the transactions through facially-neutral summaries to be provided to the jury. Such evidence should not appreciably lengthen the trial nor lead to jury confusion. Accordingly, I grant FDIC's motion and deny that of Refco.

C. *Refco's Motion to Exclude Evidence Relating to Events before JBT entered into its Second Management Agreement with Denman and Co.*

█ The first management agreement between JBT and Wymer was in effect from March, 1988 through April, 1989. JBT executed its second management agreement with Wymer on December 7, 1989. Refco argues FDIC has not alleged any claims arising out of the first management agreement and specific events alleged to have caused JBT damages occurred between December 7, 1989 and December 11, 1991. As such, Refco asserts, evidence of events before December 7, 1989 relate solely to collateral matters and should be excluded. FDIC maintains such events are relevant to show when the relationship between Wymer and Refco was formed, how it was structured and continued and what role Refco played in Wymer's fraudulent scheme.

Evidence of events before December 7, 1989, like evidence of transactions between Refco and Denman Customers other than JBT, is relevant to the extent in that it bears

on the existence and perpetuation of the alleged fraudulent scheme and constitutes circumstantial proof of Refco's knowledge thereof. As such, it is admissible.

### D. Refco's Motion to Exclude Evidence of Settlement Agreements with the SEC and CFTC.

■ Refco seeks to exclude evidence relating to settlements of disputes between (a) the Securities and Exchange Commission (SEC) and each of Refco, Inc., RCC, Douglas Blair and Robert Dantone, and (b) the Commodity Futures Trading Commission and Refco, Inc. (CFTC). It argues, because FDIC intends to introduce such evidence to establish wrongdoing and liability of Refco, it must be excluded under Rule 408. That rule states evidence of compromise and offers of compromise of a disputed claim are inadmissible to prove liability for or the validity of the claim.

FDIC acknowledges Rule 408 precludes evidence of settlement offers and agreements for the purposes of proving liability, but argues evidence of the settlements may be admissible under Rule 407 as a subsequent remedial measure as impeachment evidence bearing upon the opinions and conclusions of Defendants' experts relating to the reasonableness of Refco's internal controls and procedures. FDIC asks that I defer a ruling on this issue until trial.

Courts counsel caution in applying the exception that evidence of subsequent remedial measures may be used for impeachment purposes. See, e.g., Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1567 (11th Cir.1991) (holding it was error to introduce evidence of subsequent remedial measures to impeach witnesses' testimony). In the present case, I find prejudice and jury confusion to be overriding factors in that the jury would be likely to infer wrongdoing by Refco from settlement terms. Accordingly, I grant Refco's request to exclude evidence of settlement agreements with the SEC and CFTC.

### E. Refco's Motion to Exclude a Criminal Information filed against Kimberly Goodman and Evidence Relating to the Criminal Proceeding against her.

■ Refco seeks to exclude any evidence of criminal proceedings brought against Ms. Goodman, including the criminal information filed by the United States, her plea agreement and plea allocution. The criminal information charges Goodman with one act of criminal conduct relating to another Wymer customer, the City of Loma Linda, California. Such evidence should be excluded, Refco asserts, as unsubstantiated allegations whose probative value, if any, is substantially outweighed by the dangers of unfair prejudice, and as inadmissible hearsay under Rule 802. Likewise, the plea agreement (in which Goodman pleaded guilty to the single count information charging her with mail fraud under 18 U.S.C. § 1341 concerning Loma Linda) should be excluded as irrelevant to Refco's liability to JBT because Goodman only admitted to knowingly causing to be mailed a false information response regarding Loma Linda, dated July 23, 1991. The plea agreement should also be excluded, Refco says, as in the nature of an inadmissible settlement under Rule 408 and as hearsay since, as an admission not made during her employment, it is inadmissible against Refco. See Rule 801(d)(2)(D).

FDIC maintains the criminal judgment, plea agreement, and transcript are admissible under Rule 803(22) which provides a hearsay exception for "evidence of a final judgment, entered after a trial or upon a plea of guilty, adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment." FDIC argues the criminal judgment is relevant to this case in that it establishes that Goodman knowingly and intentionally engaged in a scheme to defraud and, pursuant to that scheme, signed and mailed audit confirmations she knew to be false, offenses punishable by imprisonment for up to five years.

I find that because the criminal information, plea and allocution related to a single act of mail fraud with regard to another Wymer customer, whose transactions are not at issue in this case, any probative value is outweighed by its patent prejudicial effect and potential for confusing and misleading the jury. Accordingly, I grant Refco's re-

quest to exclude any reference to the criminal information, plea or allocution relating to Goodman.

### F. *Refco's Motion to Sever for Trial FDIC's Claims against Refco from those against Goodman.*

■ Under Fed.R.Civ.P. 42(b), a court may order a separate trial of any claim or separate issue "in furtherance of convenience or to avoid prejudice, or where separate trials will be conducive to expedition and economy." Goodman, although a named Defendant, has never appeared nor served a pleading and the parties do not anticipate her appearance at trial. FDIC has not sought entry of default judgment under Fed. R.Civ.P. 55(a) against Goodman, although entitled to such measure for her failure to appear.

Refco argues there will be no trial regarding Goodman's liability to FDIC and the questions of any damages proximately caused by Goodman will generate complex issues irrelevant to the determination of Refco's alleged liability and damages. Because the presence of claims against Goodman will create unnecessary inefficiencies, jury confusion and unfair prejudice to Refco, Refco maintains they should be severed.

FDIC states the court cannot as a matter of law enter a default judgment against Goodman at this time, not only because its claims against her are not for a sum certain but because FDIC sues the Defendants jointly and severally. Bifurcation of the claims against Goodman, FDIC asserts, will have no effect on the evidence offered at trial as the claims and evidence against Goodman and Refco are inextricably linked in that Refco is liable under the doctrine of *respondeat superior* for the unauthorized, intentional torts committed by its employees within the scope of their employment and under the doctrine of apparent and inherent authority.

Under Fed.R.Civ.P. 20(b), I have the discretion to order separate trials to prevent delay or prejudice. Severance of the claims against Goodman will not appreciably shorten the trial or effect the evidence offered by the parties. In the absence of a compelling showing of prejudice or potential for delay, I deny Refco's request. *See United States v. Tracy,* 989 F.2d 1279, 1283 (1st Cir.1993) (denying motion to sever supported only by conclusory claims of prejudice).

### G. *Refco's Motion to Exclude Evidence, including Expert Testimony, relating to Alleged Violations of Securities Statutes, Rules, Regulations and Industry Standards.*

FDIC initially asserted state securities fraud and negligence claims against Refco but has since dismissed these claims on its own motion. The remaining claims are intentional tort claims or COCCA claims requiring proof of intentional conduct. Refco argues, as the case now stands, the question of what standards of care apply and whether Refco fell short of such standards, as measured by the numerous securities statutes, rules, regulations or industry standards cited by FDIC's experts, are irrelevant. It also maintains such evidence would be confusing and unduly prejudicial in that a jury might incorrectly find liability for intentional torts based on a failure to comply with such standards. FDIC's position is that evidence of laws, regulations and practices in the securities industry is directly relevant to its claims for intentional misconduct, breach of fiduciary duty and vicarious liability. Further, FDIC argues, the testimony of its experts in this regard will assist the jury to understand the evidence and determine the facts in issue. *See* Fed.R.Evid. 702.

■ Neither side has cited any case specifically including or excluding evidence of standards as measured by the securities statutes and regulations where there is no claim for negligence or violation of securities statutes. I therefore look generally to the applicable evidentiary rules. "All relevant evidence is admissible, except as otherwise provided.... Evidence which is not relevant is not admissible." Fed.R.Evid. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Expert testimony, which

will assist the trier of fact to understand the evidence or to determine a fact in issue, may be admitted under Fed.R.Evid. 702, if relevant and not otherwise excluded. To warrant the use of expert testimony, (1) the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the knowledge of the average layman, and (2) the witness must have such knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth. *Fineberg v. United States,* 393 F.2d 417, 420 (9th Cir.1968); Fed.R.Evid. 702. Rule 702 indicates the desirability of testimony by a qualified expert if it will assist the trier of fact.

In determining whether expert testimony will be helpful to the jury in a particular case, the court is required to evaluate "the state of knowledge presently existing about the subject of the proposed testimony" in light of its "appraisal of the facts of the case." *United States v. Brown,* 7 F.3d 648, 651–52 (7th Cir.1993) (further quotations omitted). Because the average juror is unlikely to be knowledgeable about the practices of the securities industry, evidence thereof may be helpful to the jury. Relevant evidence may, however, be excluded under Fed.R.Evid. 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

I find the securities statutes, rules, regulations or industry standards cited by FDIC's experts are relevant as reflecting the standard of care to which all in the securities industry are held. *See Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 803 F.2d 454, 461 (9th Cir.1986) (holding expert testimony regarding Securities and Exchange Commission and the National Association of Securities Dealers relevant). Such standards are relevant, at minimum, to FDIC's Fourteenth Claim for Relief alleging that Refco owed JBT "fiduciary duties of loyalty, good faith and care which required Refco to act in the best interests and for the benefit of JBT." (Third Am. Compl. § 143.) *See Ru-*

*pert v. Clayton Brokerage Co.,* 737 P.2d 1106, 1111–12 (Colo.1987) (finding the rules by which a brokerage firm protects its customers and controls its employees and accounts are relevant to the standards of care the firm must meet to discharge its fiduciary duty as evidence of knowledge of the precautions necessary to reduce the risks). The same principles apply to FDIC's claims for breach of fiduciary duty and failure to properly supervise its employees resulting in vicarious liability.

The court can and will instruct the jury on how and for what purposes it might consider an expert's testimony and, as previously indicated, may streamline the expert testimony by appointing its own expert or experts. I find the balancing required by Rule 403 favors the admission of expert testimony concerning standards of care in the securities industry. Accordingly, I deny Refco's motion in this regard.

H. *Refco's Motion to Exclude Testimony by Plaintiff's Purported Expert Witnesses, John Moye and Bernard Lubin:*

Refco moves to exclude the testimony of FDIC's purported expert witnesses Lubin and Moye because FDIC failed to comply with Fed.R.Civ.P. 26(a)(2) requiring a plaintiff to identify each expert it may use at trial and furnish a written report by each expert within the time prescribed. The motion is moot with regard to Mr. Moye as FDIC has indicated it no longer intends to call him as a witness. FDIC submits that a ruling on the issue of Mr. Lubin's testimony is premature and should await developments at trial. It concedes Mr. Lubin has not been designated as an expert in this trial but asserts he was designated and deposed by Refco in a related case in California. FDIC submits the transcript of Mr. Lubin's deposition would be admissible in this case pursuant to Fed.R.Evid. 804(b)(1), which permits testimony given in a deposition in another case if the party against whom it is now offered had an opportunity and similar motive to develop the testimony by direct or redirect examination.

Refco denies it has had an opportunity to examine Mr. Lubin concerning JBT. In any event, the Rule 804(b)(1) hearsay exception only applies if the deponent is now unavailable as a witness. Because there has been no showing of Mr. Lubin's unavailability, I grant Refco's motion in this regard. *See O'Banion v. Owens–Corning Fiberglas Corp.,* 968 F.2d 1011, 1014–15 (10th Cir.1992) (discussing unavailability under Rule 804).

### I. *Refco's Motion to Exclude Expert Testimony about the Purported "Knowledge" of Refco or JBT.*

■ FDIC proposes to introduce the testimony of an expert named Ferguson on whether employees, officers or directors of Refco knew about the fraudulent activities of Wymer and Denman and the testimony of an expert Ralph Mires concerning the knowledge of JBT officers, directors and employees and banking regulators. Refco seeks to exclude such testimony as concerning the ultimate issue of state of mind and usurping the function of the jury. *See United States v. Simpson,* 7 F.3d 186, 188 (10th Cir.1993). It also asserts, applying the Rule 702 test, such opinions should be excluded as unhelpful to the jury and unfairly prejudicial to Refco.

Refco has indicated present and former employees will testify that they did not know of Wymer's fraud. FDIC asserts it will introduce expert testimony that particular individuals engaged in conduct inconsistent with industry practices or regulatory requirements from which the jury may infer or conclude that such individuals had the intent and knowledge required to establish FDIC's claims. I have already ruled that expert testimony concerning standards of care in the securities industry is admissible under Rule 702. Rule 704 permits testimony in the form of an opinion or inference, otherwise admissible, notwithstanding that it embraces an ultimate issue to be decided by the trier of fact (except with regard to the mental state or condition of a defendant in a *criminal* case). As indicated, the court will instruct the jury on how and for what purposes it might consider any expert's testimony. I

therefore deny Refco's motion seeking to exclude such expert testimony.

### J. *Refco's Motion to Exclude the Character and Speculative Testimony by FDIC's purported expert witness Ralph Mires.*

■ FDIC's proposed expert, Ralph Mires, has disclosed that, as a bank examiner for the Federal Reserve and state's Bank Commissioner, he was actively involved in the regulation and supervision of JBT. Refco seeks to exclude Mr. Mires' proposed testimony that, based on his contacts with JBT, he formed a favorable opinion of its senior managers and members of its board of directors. Such character evidence, Refco submits, falls within the prohibition of Fed. R.Evid. 404(a), precluding evidence of a person's character for the purposes of proving action in conformity therewith on a particular occasion. It also seeks an order precluding Mr. Mires' testimony on what he speculates might or might not have occurred had JBT taken certain actions on the grounds that it is speculative and worthless to the jury. It cites *Eastridge Development Co. v. Halpert Assocs.,* 853 F.2d 772, 783 (10th Cir.1988) where an expert had admitted (outside the presence of the jury) that how he had arrived at the value of a settlement was largely subjective. The appeals court found in the circumstances of the case, including the tentative and speculative nature of the testimony, the exclusion of such proposed testimony was not an abuse of discretion. I find the challenge to Mr. Mires' proposed testimony is well taken.

### III. *Conclusion.*

For the aforesaid reasons, I grant FDIC's motion in limine to exclude evidence relating to the 1993 criminal referral relating to Maurice Grotjohn; grant FDIC's motion to admit evidence of transactions between Refco and other Denman customers to the extent that it is relevant to established the alleged fraudulent scheme; deny Refco's motion in limine to exclude evidence relating to the dealings between Refco and any Wymer customer other than JBT; deny Refco's motion to exclude evidence relating to events before JBT entered into its second management agreement with Denman and Co., dated De-

cember 7, 1989; grant Refco's motion to exclude evidence relating to settlements of disputes; grant Refco's motion to exclude reference to a criminal information and the criminal proceeding against Goodman; deny Refco's motion to sever for trial FDIC's claims against Refco from its claims against Goodman; deny Refco's request to exclude evidence, including expert testimony, relating to alleged violations of securities statutes, rules, regulations and industry standards; grant Refco's request to exclude testimony by purported expert witnesses Bernard Lubin; deny Refco's request to exclude expert testimony about the purported "knowledge" of Refco or JBT; and grant Refco's motion to exclude the character and speculative testimony by expert witness Ralph Mires.

On or before February 19, 1999, the parties shall file a further amended pretrial order and a revised set of jury instructions based on this order and my comments heretofore rejecting the previous proposed amended pretrial order and tendered jury instructions. Based upon the delineation of contested issues and stipulations in the new proposed amended pretrial order and the revised set of jury instructions, I will reconsider whether appointment of court-appointed experts is appropriate and set a new trial date based on the parties' revised estimates of time needed for trial.