UNITED STATES of America, Plaintiff/Appellee,

v.

William A. SIMPSON, Defendant/Appellant.

No. 92–1141.

United States Court of Appeals, Tenth Circuit.

Oct. 6, 1993.

Richard J. Banta, Denver, CO, for defendant, appellant.

Linda A. Surbaugh, Asst. U.S. Atty., D. Colo. (Michael J. Norton, U.S. Atty., on the brief), for plaintiff, appellee.

Before McKAY, Chief Judge, McWILLIAMS, Senior Circuit Judge, and SAFFELS, Senior District Judge.[1]

McKAY, Chief Judge.

On March 27, 1992, Appellant William A. Simpson was convicted of three counts of misapplication of bank funds under 18 U.S.C. § 656 (1988)[2] and two counts of making false statements in loan applications under 18 U.S.C. § 1005 (1988).[3] He was also convict-

---

1. Honorable Dale E. Saffels, Senior District Judge for the District of Kansas, sitting by designation.

2. Title 18 U.S.C. § 656 provides:

   Whoever, being [a] ... director ... or connected in any capacity with any Federal Reserve Bank, member bank, national bank or insured bank, ... embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank ... shall be fined not more than $5,000 or imprisoned for not more than five years or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

3. Title 18 U.S.C. § 1005 provides in part:

   Whoever makes any false entry in any book, report, or statement of [a federally insured] bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to de-

ed of aiding and abetting in connection with these violations. These convictions resulted from various transactions in which Mr. Simpson was involved as a director and majority shareholder of the Citizen's National Bank in Colorado Springs, Colorado.

In this appeal, Mr. Simpson challenges the exclusion of certain expert testimony. Additionally, he challenges a ruling by the trial court allowing the prosecuting attorney to comment on the lack of evidence of Mr. Simpson's good faith. Mr. Simpson argues that this ruling compelled him to testify when he would not otherwise have done so.

### I.

At trial, Mr. Simpson put on testimony by Mr. William M. Schumpert. Mr. Schumpert was qualified as an expert in banking practices and operations, specifically with regard to small banks. Defense counsel sought to ask Mr. Schumpert if the transactions for which Mr. Simpson was charged constituted misapplication or concealment of funds. After an objection by the government, the trial court ruled that defense counsel could not ask the question. The trial court, however, gave defense counsel considerable latitude in asking whether the transactions conformed with standard banking procedures.[4]

Mr. Simpson argues on appeal that the trial court erred by refusing to allow the expert to testify as to whether the transactions in question amounted to misapplication or concealment of funds. We review the trial court's decision on this evidentiary question for abuse of discretion, and we reverse only if the trial court's decision is manifestly errone-

ous. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). Moreover, if error by the trial court does not affect substantial rights and does not result in actual prejudice, the error is harmless and does not merit reversal. *A.E. By and Through Evans v. Independent Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir.1991). We do not believe that the trial court abused its discretion in refusing to admit this evidence.

Rule 704 of the Federal Rules of Evidence allows an expert to offer opinion evidence even if it "embraces an ultimate issue to be determined by the trier of fact." Fed. R.Evid. 704. The Federal Rules, however, do not allow the admission of all such opinion evidence. The Rules do not, for example, allow an expert to offer testimony that merely tells the jury what result they should reach or testimony phrased in terms of "inadequately explored legal criteria." Fed. R.Evid. 704 adv. comm. note. Expert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law. *See, e.g., Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989); *but see id.* at 814 (Seymour, J., dissenting) (more appropriate rationale for exclusion of such evidence is lack of helpfulness to jury). When an expert merely states an opinion on an ultimate issue without adequately exploring the criteria upon which the opinion is based, the jury is provided with no independent means by which it can reach its own

---

ceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

4. During discussions between counsel and the court, the judge suggested the following formulations of the question:

THE COURT: Now, we know that he can give opinions on factual issues, not on the ultimate factual issue of guilt or innocence.
(Rec. vol. VII at 799.)

THE COURT: Why can't you just ask him what he as a bank examiner might have done in this case? ... Now, if there is some other way to put the factual issues, I'll let you do it so it doesn't take the issue from the jury.
(Rec. vol. VII at 802).

THE COURT: What if the question is whether it's appropriate according to banking customs to do A, B, C, D?
(Id.)

THE COURT: And I think if you can ask your questions in the terms of acceptable or standard banking practices, then we're not going to have any problem.
(Id. at 813.)

conclusion or give proper weight to the expert testimony. *Cf. Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir.1987) (expert explained bases for opinion in sufficient detail to allow jury to make independent judgment).

In this case, defense counsel sought to admit testimony by the expert as to whether the transactions in question constituted misapplication or concealment. Whether or not this proffered testimony amounts to a legal conclusion, devoid of helpfulness to the trier of fact, is a close question. Given the broad discretion afforded the trial court, we cannot conclude that the trial court erred in refusing to admit this evidence. This is especially true given the pains the trial court took to provide defense counsel with alternative means by the which the expert witness could permissibly express his opinion on the propriety of the transactions in question.

## II.

During the trial, counsel, the court, and the Defendant held extensive conversations on the good faith aspects on Mr. Simpson's theory of the case and his willingness to testify. At one point, Mr. Simpson had decided not to testify.[5] During bench conferences, defense counsel argued for the trial court to instruct the jury on Mr. Simpson's good faith theory; the prosecution argued, however, that there was insufficient evidence to warrant such an instruction. The trial court indicated that if the good faith instruction were given, the prosecution would be allowed to comment on the perceived paucity of evidence on Mr. Simpson's good faith. As a result, Mr. Simpson decided to testify. On appeal, Mr. Simpson argues that, by allowing such comment, the trial court compelled him to take the stand and testify in violation of his constitutional rights.

The merits of Mr. Simpson's argument on appeal are largely dependent upon whether the latitude the trial court was willing to give the prosecution on closing argument was improper. *See United States v. Hearst*, 563

F.2d 1331, 1339 (9th Cir.), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). Accordingly, we evaluate whether the trial court gave the prosecution impermissibly broad latitude in framing its closing argument. We then examine whether allowing such comment constituted compulsion of Mr. Simpson's testimony.

It is axiomatic that comment upon a defendant's failure to testify violates the defendant's Fifth Amendment rights against self-incrimination. *United States v. Nolan*, 416 F.2d 588, 594 (10th Cir.) (citing *Griffin v. California*, 380 U.S. 609, 611–12, 85 S.Ct. 1229, 1231–32, 14 L.Ed.2d 106 (1965)), *cert. denied*, 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969). Such comment constitutes an impermissible penalty upon the exercise of a constitutional right. *Id.* Prosecutorial comment upon a failure to testify constitutes reversible error if it was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Runnels v. Hess*, 653 F.2d 1359, 1361 (10th Cir.1981) (citing *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955)).

While direct or indirect references to a defendant's failure to testify are clearly prohibited, the prosecution is not per se prevented from commenting on the evidence presented on a defendant's theory of the case. The case of *United States v. Lockett*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), is instructive. In *Lockett*, the defendant was convicted of aggravated murder and aggravated robbery for her role in a bank robbery. At trial, defense counsel outlined the defendant's theory of the case and, at one point, informed the court in the presence of the jury that the defendant would be the next witness. The defendant, however, decided not to testify. During closing arguments, the prosecution referred to the state's "uncontradicted" and "unrefuted" evidence. The defendant argued on appeal that these comments constituted impermissible commentary on her failure to testify. The Su-

---

**5.** Defense counsel had initially indicated to the court, but out of the hearing of the jury, that Mr. Simpson would testify. Subsequently, however, the record indicates that Mr. Simpson decided

not to testify. Because the record does not contain opening arguments, we cannot determine whether the jury was ever told that Mr. Simpson would testify.

preme Court disagreed, noting that defense counsel had outlined the contemplated defense, and had indicated to the jury that the defendant would testify. The court held that the prosecutor's comments "added nothing to the impression that had already been created by [the defendant's] refusal to testify after the jury had been promised a defense by her lawyer and [had been] told that [the defendant] would take the stand." *Id.* at 595, 98 S.Ct. at 2960.

Many courts have used the rationale of *Lockett* to uphold prosecutorial comment on the lack of evidence supporting a defendant's theory of the case when the defendant does not testify. *See United States v. Burnett,* 890 F.2d 1233, 1241–42 (D.C.Cir.1989) (prosecutor's comments not improper if invited by defense counsel's argument); *United States v. Percy,* 765 F.2d 1199, 1204 (4th Cir.1985) (prosecutor's characterization of state's evidence as "unrefuted and unrebutted" not error); *Bontempo v. Fenton,* 692 F.2d 954, 958–59 (3d Cir.1982) (prosecutor's comments on absence of facts in record supporting defendant's theory not violative), *cert. denied,* 460 U.S. 1055, 103 S.Ct. 1506, 75 L.Ed.2d 935 (1983); *Butler v. Rose,* 686 F.2d 1163, 1171–72 (6th Cir.1982) (prosecutorial commentary not error where defense counsel told jury he expected defendant to give exculpatory testimony). *But see Raper v. Mintzes,* 706 F.2d 161, 166 (6th Cir.1983) (prosecutor's remarks that government's evidence was uncontradicted reversible error where only defendant could have testified to contrary). Other decisions have upheld the propriety of such remarks under similar reasoning. *See United States v. Prichard,* 645 F.2d 854, 858 (10th Cir.) (defense counsel's opening argument invited prosecutor's response that defense had not proved what they said they would), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981); *United States v. Glantz,* 810 F.2d 316, 323 (1st Cir.) (no error if one interpretation of prosecutor's remarks is to show lack of evidence supporting theory rather than to comment on defendant's failure to testify), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987); *United States v. Griggs,* 735 F.2d 1318, 1322–24 (11th Cir.1984) (prosecutorial commentary in form of rebuttal of unsupported defense

claims not violative); *United States v. Freeman,* 660 F.2d 1030, 1037 (5th Cir.1981) (comment on defense failure to prove coercion theory permissible), *cert. denied,* 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982).

The record in this case reflects that the good faith defense was an important part of Mr. Simpson's defense. Although we do not have a transcription of the opening or closing arguments to the jury, defense counsel argued extensively to the court that a good faith instruction was warranted and presented his view of the evidence which supported this theory. (Rec. vol. VII at 850–54.) The prosecution objected to the court's giving a good faith instruction on the grounds that it was not supported by the evidence. Alternatively, the prosecution sought to comment on the fact that there was little or no evidence of Mr. Simpson's good faith. Without Mr. Simpson's testimony on his good faith, the evidence supporting the instruction was scant. (*See* Rec. vol. VII at 858–59 (trial court's comment to counsel on evidence of good faith.))

■ We believe that the trial court's actions were entirely appropriate in this situation. After hearing argument from both sides, the trial court indicated that if a good faith instruction were given and if Mr. Simpson did not testify, the prosecution would be allowed to argue in its closing argument that the evidence of good faith was very slim. The court directed, however, that the prosecution could not mention Mr. Simpson's name or comment on his decision not to testify. (Rec. vol. VII at 858, 859.) In so doing, the trial court sufficiently safeguarded Mr. Simpson's right not to testify while allowing the government the appropriate latitude in commenting on the evidence.

■ Given the propriety of the trial court's actions, we find Mr. Simpson's argument that this situation compelled him to take the stand in violation of his Fifth Amendment rights unavailing. While the Fifth Amendment guarantees the right of the accused not to be compelled to testify, it does not guarantee that the accused will not be placed in a situation where he feels he must testify or risk conviction. Requiring the ac-

cused to choose between complete silence and presenting a defense does not violate the accused's constitutional rights. *United States v. Hearst*, 563 F.2d 1331, 1339 (9th Cir.) (quoting *Williams v. Florida*, 399 U.S. 78, 83–84, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). Similarly, a defendant's rights are not violated simply because he feels that he must choose between silence or testifying to strengthen his defense.

In conclusion, we hold that the trial court did not err in limiting the testimony of Mr. Simpson's expert witness. Additionally, we hold that the trial court did not compel Mr. Simpson to testify in violation of his Fifth Amendment rights. Accordingly, the decision of the trial court is AFFIRMED.