**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 12 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

OMAR COMBS,

        Defendant - Appellant.

No. 00-2018

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

BRUCE PAUL WILLIAMS,

        Defendant - Appellant.

No. 99-2341

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NOS. CR-98-98LH; CR-98-98BB)**

Jose R. Coronado, Las Cruces, New Mexico, for Defendant-Appellant Omar Combs.

Todd B. Hotchkiss, Albuquerque, New Mexico, and Peter J. Giovannini, Las Cruces, New Mexico, on the brief, for Defendant-Appellant Bruce Paul Williams.

James R. W. Braun, Assistant United States Attorney (Norman C. Bay, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **HENRY** , **HOLLOWAY** , and **MURPHY** , Circuit Judges.

**HENRY** , Circuit Judge.

After a jury trial, Omar Combs and Bruce Paul Williams were convicted of conspiracy to distribute marijuana and possession with intent to distribute of more than 100 pounds of marijuana. Each now appeals various aspects of his conviction and sentence. As the appeals share a factual history, we have consolidated them for the purpose of this disposition. We have jurisdiction pursuant to 28 U.S.C. § 1291 and, for the reasons discussed below, affirm the convictions and sentences of Messrs. Combs and Williams.

## I. BACKGROUND

On the morning of January 31, 1998, Mr. Williams drove into a U.S. Border Patrol checkpoint near Alamogordo, New Mexico. Mr. Combs was the sole passenger in Mr. Williams's car. When questioned by a Border Patrol agent, Mr. Williams stated that he and Mr. Combs intended to visit a friend in Alamogordo and then drive to Louisiana. The Border Patrol agent asked for the name and the

address of the friend, but Messrs. Williams and Combs could provide neither. Although this apparently troubled the Border Patrol officer, he found their story "plausible" and allowed them to drive on towards Alamogordo. Aplt. Combs App. at 77.

About five minutes later, another car arrived at the same checkpoint. This car was driven by Dewayne Lamont Green, and Allana Redman was a passenger in it. Mr. Green stated to the (same) Border Patrol agent that he and Ms. Redman were going to Louisiana. The agent noticed a strong smell of air freshener coming from the vehicle and asked permission to look in its trunk. After receiving permission, he discovered another strong odor of air freshener inside the trunk, as well as a large black suitcase that he testified seemed too hard and heavy to be filled with clothing.

The agent asked Mr. Green to drive to the secondary inspection area. At the secondary inspection area, Mr. Green and Ms. Redman were unable to produce identification. The agent informed them that they were not free to leave, yet, when the agent went to discuss the situation with other agents, Mr. Green and Ms. Redman fled the checkpoint. Police apprehended Mr. Green and Ms. Redman a short time later and discovered approximately 224 pounds of marijuana in the vehicle's trunk. Because the Border Patrol suspected that Mr. Green and Ms. Redman had some relationship to Messrs. Williams and Combs, they put out an

alert on the car driven by Mr. Williams. It was soon found, and the occupants arrested, in Tularosa, New Mexico.

In February of 1998, Ms. Redman and Messrs. Williams and Combs were indicted on charges of conspiracy to distribute in excess of 100 pounds of marijuana, and for violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). [1] Ms. Redman was also charged with fleeing from the Border Patrol checkpoint. In August of 1998, Ms. Redman pled guilty to misprision of a felony and agreed to testify for the government.

Mr. Combs characterizes Ms. Redman as having portrayed herself at trial as a "naive and unsuspecting dupe" of Messrs. Williams and Combs. Aplt. Combs Br. at 6. Ms. Redman testified that she traveled with Messrs. Williams and Combs for an extended period of time, driving from Washington, D.C. through New Orleans to New Mexico. She stated that Mr. Williams rented an additional car with Mr. Combs, and that Mr. Williams directed her to rent several different hotel rooms as they moved around Las Cruces, New Mexico. She testified that she was not aware that the trip was really about picking up marijuana until she accidentally discovered bundles of marijuana in both Combs's and Williams's suitcases on January 29, 1998. See Aplt. Combs App. at 139 (trial testimony of Ms. Redman). She also testified that after she confronted Messrs. Williams and

---

[1] Mr. Green is not involved in the present appeals.

Combs concerning her discovery of the marijuana, the two acted "upset" and began "talking to each other." Id. at 141. She claimed to be too "terrified" of them to report the illegal activity to the police. Id. at 155.

After the trial, the prosecution was informed by the United States Pretrial Services Agency ("Pretrial Services") that Ms. Redman, who was released on bond after her plea, had failed seven drug tests administered as part of her release (by testing positive for marijuana use). The prosecution then informed Messrs. Combs and Williams of Ms. Redman's transgressions. [2] Mr. Combs moved for a new trial on the basis that this was a violation of Brady v. Maryland, 373 U.S. 83 (1963), or that this newly discovered evidence required a new proceeding. The district court denied the motion.

## II. OMAR COMBS

On appeal, Mr. Combs asserts four possible errors: that the government's failure to inform defense counsel of Ms. Redman's drug use constituted a violation of Brady; that Ms. Redman's drug use, as newly discovered evidence, warrants a new trial; that the district court abused its discretion in refusing to permit Simone Gale, a proffered defense witness, to testify; and that Mr. Combs's

---

[2] We note, and appreciate, the government's candor and professionalism in reporting the failed drug tests to the defendants when the government did finally become aware of those tests.

sentence violated Apprendi v. New Jersey, 530 U.S. 466 (2000). We consider these contentions in turn.

### A. Ms. Redman's Drug Use: Brady Violation

Mr. Combs argues that because Pretrial Services was aware of Ms. Redman's marijuana use during trial, and because it is "an agency of the United States government," its knowledge should be imputed to the prosecution. Aplt. Combs Br. at 6. He states that "Allana Redman was a critical witness in this case" and that "without her testimony, there was little to connect Mr. Combs to the marijuana." Id. at 5. He further states that if "she appeared to be a regular marijuana user" it "could have completely destroyed her credibility with the jury." Id. at 6. The failure of the prosecution to disclose Ms. Redman's drug use, argues Mr. Combs, should therefore be considered a Brady violation.

If a new trial motion is based on an alleged Brady violation, we review the district court's decision de novo. United States v. Quintanilla, 193 F.3d 1139, 1146 (10th Cir. 1999); United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir. 1994). In order to establish a Brady violation, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material. Quintanilla, 193 F.3d at 1149; see also Brady, 373 U.S. at 87.

## 1. Suppression of Evidence

Mr. Combs first argues that even though the prosecution was not aware of Ms. Redman's marijuana use until after the trial, it should still be deemed to have suppressed the evidence of that drug use, because it did not take the required "steps to learn of evidence" that is both "favorable to the defense" and in the possession of other government agencies. Aplt. Combs Br. at 6. In support of this proposition, Mr. Combs cites several cases in which courts found Brady violations where government agencies other than the prosecution were aware of evidence that could have helped the defense.

In United States v. Deutsch, 475 F.2d 55 (5th Cir. 1973), overruled on other grounds by United States v. Henry, 749 F.2d 203 (5th Cir. 1984), the United States was held to have violated Brady when it failed to obtain personnel records from the United States Post Office and turn them over to the defense, in a case in which the defendants and the government's witness were all Post Office employees. The Deutsch court stated:

> The government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting a government employee in the Post Office and use him as its principal witness, but deny having access to the Post Office files. In fact it did not even deny access, but only present possession without even an attempt to remedy the deficiency. We do not suggest . . . that the government was obliged to obtain evidence from third parties, but there is no suggestion in Brady that

-7-

different "arms" of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities.

Deutsch, 475 F.2d at 57 (citations and footnote omitted).

In United States v. Auten, 632 F.2d 478, 481 (5th Cir. 1980), the Fifth Circuit cited Deutsch in support of the proposition that the requirement of "disclosure" is not excused "where the prosecution has not sought out information readily available to it." In Auten, the prosecution failed to conduct a criminal background check on a witness because it had only made the decision to call the witness the night before he testified. The court held that the fact "[t]hat the prosecutor, because of the shortness of time, chose not to run an FBI or NCIC check on the witness, does not change 'known' information into 'unknown' information within the context of the disclosure requirements." Id. Mr. Combs argues that in light of Deutsch and Auten, we should impute information possessed by Pretrial Services to the prosecution.

The government disagrees with Mr. Combs's position and contends that there is a distinction for purposes of Brady disclosure between government agencies and agencies acting on behalf of "the government" (i.e., the prosecution). In the government's view, because Pretrial Services is "an arm of the judiciary, not the prosecution," it was not "'acting on the government's behalf in this case'" and its knowledge "cannot be imputed to the prosecution." Aple's Br. (Combs) at 18-19 (quoting Strickler v. Greene, 527 U.S. 263, 280-81 (1999)).

The government cites two cases for the proposition that information in the possession of the Probation Office, which like Pretrial Services is a judicial agency, [3] is not under the control of the prosecution for Brady purposes. In United States v. Zavala, 839 F.2d 523, 528 (9th Cir. 1988), the Ninth Circuit found that disclosure of reports "in the hands of the court or the probation office" was not required by Brady. And in United States v. Sherlin, 67 F.3d 1208, 1218 (6th Cir. 1995), the Sixth Circuit stated that "Brady expressly applies to material evidence withheld from the defense by the prosecution."[4] Because, in its view, Pretrial Services officers "do not work for, and are not under the control of, the United States Attorney's Office or any investigative agency of the Executive branch," the government concludes that "information in the possession of Pretrial Services cannot be imputed to the government." Aple's Br. (Combs) at 19-20.

This court discussed "[t]he question of how much of the knowledge possessed by various arms of the State should be imputed to the prosecution" in

_____

[3] Pretrial Services describes itself as "residing within the United States District Court." See Home Page of United States Pretrial Services Agency, District of New Mexico, available at http://www.nmcourt.fed.us/ptdocs/index.html.

[4] In Sherlin, the Sixth Circuit relied heavily, if not exclusively, upon the Fifth Circuit's decision in United States v. Trevino, 556 F.2d 1265, 1270-71 (5th Cir. 1971). Trevino, however, predates 18 U.S.C. § 3154 (outlining the duties of Pretrial Services) and certainly predates the 1982 amendment to § 3154 by which Congress inserted the phrase "and the United States attorney," thereby explicitly adding the duty to report violations of pretrial release conditions.

Smith v. Secretary of N.M. Dep't of Corrections, 50 F.3d 801 (10th Cir. 1995).

Smith described that question as one of first impression in this circuit, and reviewed cases from other circuits addressing it. See id. at 825 n.36 (collecting cases). Smith identified the First and Third Circuits as having "taken an expansive view and hav[ing] imputed a broad range of knowledge to the prosecution." Id. For example, in United States v. Thornton, 1 F.3d 149, 158 (3d Cir. 1993), the Third Circuit stated that "prosecutors have an obligation to make a thorough inquiry of all enforcement agencies that had a potential connection to the witnesses." (Citing United States v. Perdomo, 929 F.2d 967, 969 (3d Cir. 1991)). It held that prosecutors violated Brady's disclosure requirements when they failed to make "any follow-up inquiry" of the DEA, after the DEA did not respond to an initial request to advise the prosecutors "of any payments [to witnesses] that would have to be disclosed under Brady." Id. And in United States v. Osorio, 929 F.2d 753, 762 (1st Cir. 1991), the First Circuit held that a prosecutor

> is duty bound to demand compliance with disclosure responsibilities by all relevant dimensions of the government. Ultimately, regardless of whether the prosecutor is able to frame and enforce directives to the investigative agencies to respond candidly and fully to disclosure orders, responsibility for failure to meet disclosure obligations will be assessed by the courts against the prosecutor and his office.

Smith also stated that the Fifth Circuit had "taken a more moderate approach." Smith, 50 F.3d at 825 n.36. In Williams v. Whitley, 940 F.2d 132

(5th Cir. 1991), the Fifth Circuit held that "the prosecution is deemed to have knowledge of information readily available to it," such as police reports. Id. at 133. Finally, Smith characterized the Ninth and District of Columbia Circuits as having "not clearly defined the extent" of the Brady obligation. Smith, 50 F.3d at 825 n.36. Smith went on to hold that because one county district attorney's office had "actual knowledge" of an investigation by another county into the same homicide it was prosecuting, it was "reasonable to impute the knowledge possessed by each [county] to the prosecution under Brady." Id. However, Smith declined to reach the issue of "the full extent of when knowledge possessed by an arm of the State will be imputed to the prosecution." Id.

As the government admits, Pretrial Services has a statutory duty to report any violation of pretrial release conditions to both the court and the United States attorney. See 18 U.S.C. § 3154(5). [5] Further, the Supreme Court has interpreted Brady broadly, in order to provide an incentive for the government to initiate "procedures and regulations" to carry the prosecutor's "duty to *learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437-38 (1995)

_____

[5]"Pretrial services functions shall include:
    ....
      (5) Inform[ing] the court and the United States attorney of all apparent violations of pretrial release conditions..."

(emphasis added); see also United States v. Brooks, 966 F.2d 1500, 1500-04 (D.C. Cir. 1992) (holding that prosecution's duty to learn of Brady material extends to the files of the police department's homicide and internal affairs divisions; observing: "The cases finding a duty to search have involved files maintained by branches of government closely aligned with the prosecution... and in each case the court has found... bureaucratic boundar[ies] too weak to limit the duty.") (internal quotation marks omitted).

In this case, notably, Ms. Redman's plea agreement was filed on August 10, 1998, approximately a week before the trial–at which time Ms. Redman had already failed three drug tests. See Aplt. Combs App. at 11. While we do not excuse the failure of Pretrial Services to report these drug violations, there is no reason to think that the prosecution, at the time it chose to use Ms. Redman as its star witness, could not have checked with Pretrial Services to ascertain whether she was complying with the conditions of her release. It certainly would have been no greater burden for the prosecution in this case to inquire of Pretrial Services, or to exchange information with Pretrial Services, than it was for the prosecution to interview law enforcement agents in Thornton or Osorio, to run an NCIC check in Auten, or to examine Post Office personnel files in Deutsch.

Thus we are confronted with two lines of cases – one line suggests that Pretrial Services is not covered by Brady, see Sherlin, 67 F.3d at 1218, and one

-12-

line suggests that Brady is broadly construed to apply to agencies in reasonable proximity to the prosecution, see Brooks, 966 F.2d at 1500-04. As all of the cases in the former line, save Sherlin, predate the statutory requirement of § 3154(5), the argument can be made that this case falls more in line with Brooks. Nevertheless, we need not resolve this tension in this case. Rather, as we conclude below that this evidence is not material, we adopt a more restrained approach in instead relying on that latter conclusion of immateriality. Cf. United States v. Gambino, 59 F.3d 353, 364-66 (2d Cir. 1995) (avoiding certain suppression issues by concluding that the evidence at issue was immaterial).

## 2. Favorable Evidence

The second part of Brady "requires proof the evidence in question was exculpatory, or favorable, to the defendant." Smith, 50 F.3d at 825. Impeachment evidence, such as the evidence of Ms. Redman's marijuana use, satisfies this standard. Id. at 825-26.

## 3. Material Evidence

The third part of a Brady claim "requires proof that the evidence was 'material either to guilt or to punishment.'" Smith, 50 F.3d at 826 (quoting Brady, 373 U.S. at 87). "'A fair analysis of the holding in Brady indicates that implicit

-13-

in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.'" Id. (quoting United States v. Agurs, 427 U.S. 97, 104 (1976)). Evidence is therefore material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir. 1994) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

In this case, we are convinced that there is no reasonable probability that the impeachment evidence of Ms. Redman's marijuana use would have affected the outcome of Mr. Combs's trial. As the district court observed in ruling on Mr. Combs's motion for a new trial based on newly discovered evidence, the fact that Ms. Redman smoked marijuana would not prove that Mr. Combs was not involved in a plan to smuggle marijuana. It might show that Ms. Redman was more than an innocent dupe along for the ride, but it is highly unlikely that a jury would have swung all the way to the other side and concluded that the seized marijuana belonged to Ms. Redman and that Mr. Combs had no idea what was happening. We note that the government produced physical evidence, including a car rental agreement and a series of motel receipts, to corroborate Ms. Redman's testimony. This evidence suggested that Ms. Redman, Mr. Combs, and Mr. Williams all

-14-

traveled together, and, if anything, had a common plan to smuggle. See United States v. Hanzlicek, 187 F.3d 1228, 1232 (10th Cir. 1999) (stating that elements of a conspiracy "may be proven by direct or circumstantial evidence"); see also United States v. Harrison, 942 F.2d 751, 755-56 (10th Cir. 1991) (important questions are "whether the alleged co-conspirators were united in a common unlawful goal or purpose" and whether their actions exhibit "interdependence"). We therefore hold that the evidence was not material and that there was no Brady violation.

**B. Ms. Redman's Drug Use: Newly Discovered Evidence**

Even if Pretrial Services' failure to reveal Ms. Redman's drug use did not constitute a Brady violation, Mr. Combs argues that, as newly discovered evidence, it still requires a new trial. The district court denied Mr. Combs's motion for a new trial on the basis of newly discovered evidence. We review this decision under an abuse of discretion standard. See United States v. Byrne, 171 F.3d 1231, 1235 (10th Cir. 1999). A decision is an abuse of discretion only if it is "'arbitrary, capricious, whimsical, or manifestly unreasonable.'" Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999) (quoting FDIC v. Oldenburg, 34 F.3d 1529, 1555 (10th Cir. 1994) (further quotation omitted)).

A motion for a new trial based on newly discovered evidence is not favorably regarded and "should be granted only with great caution." United States v. Youngpeter, 986 F.2d 349, 356 (10th Cir. 1993) (internal quotation marks omitted). When a motion for a new trial is based on newly discovered evidence, the defendant is usually required to show that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997).

The district court found that the first two Sinclair factors were satisfied in this case, given that Pretrial Services had failed to inform either side of Ms. Redman's failed drug tests until after the trial, and that, in the court's opinion, "diligent counsel" would not "routinely [have] made a pretrial inquiry" regarding the results of such drug tests. Aplt. Combs App. at 54-55 (Dist. Ct. Order, dated July 8, 1999). However, the district court found that the last three Sinclair factors cut against Mr. Combs. As discussed above, it stated that the evidence against Ms. Redman was probably merely impeaching, that the evidence would not lead to impeachment on a material fact, and that the evidence would probably not lead to Mr. Combs's acquittal. The fact that Ms. Redman smoked marijuana, it observed, "would not prove Defendants were not involved in trafficking narcotics. It would

-16-

only tend to show [Ms.] Redman was not a naive college student, but a voluntary participant in Defendants' illegal activities." Id. at 56. In fact, the court stated, "if the jury believed [Ms.] Redman was a knowing co-conspirator," it might even have enhanced her credibility. Id. at 57.

The district court also found that the government had produced ample physical evidence, including the rental agreement and motel receipts, to corroborate Ms. Redman's testimony. Id. It concluded that because the newly discovered evidence did not relate to guilt and "would not likely have changed the outcome," a new trial was not warranted. Id. at 59-60.

On appeal, Mr. Combs asserts that these conclusions by the district court were incorrect. He argues that "[i]f the jury disbelieved Ms. Redman, there was no other evidence available from which to conclude" that he had possessed the marijuana. Aplt. Combs Br. at 9. Without Ms. Redman's testimony, Mr. Combs states that the government might have been able to prove that he was "present at various motels in Las Cruces over about a two-week period," but it "could not have linked him to the marijuana." Id. Mr. Combs proposes that if Ms. Redman had been discredited through the evidence of her drug use, the jury might have concluded that the marijuana belonged to her, rather than him, resulting in his acquittal. He cites Smith for the proposition that "[w]hat might be considered

-17-

insignificant evidence in a strong case might suffice to disturb an already questionable verdict." Smith, 50 F.3d at 827 (citations omitted).

The government counters that the new evidence is merely impeaching, is not material, and would not likely produce an acquittal. In support of its impeachment argument, it cites United States v. Brewer, 630 F.2d 795 (10th Cir. 1980). In Brewer, this court found that the discovery that a government witness had been dealing drugs the day before trial did not justify a new trial, as the evidence "related only to impeachment purposes" and was "highly unlikely" to produce a different result at trial. Id. at 803 (internal quotation marks omitted). The government argues that Ms. Redman's marijuana use is merely impeaching and is not material to the principal issue of "whether [Messrs.] Combs and Williams knowingly possessed the marijuana with the intent to distribute it." Aple's Br. (Combs) at 25. Finally, the government states that the evidence is unlikely to produce an acquittal because it "is highly improbable" that the jury would have chosen to disregard Ms. Redman's testimony and acquit Mr. Combs simply because it knew she used marijuana. Id. at 28 (discussing United States v. Trujillo, 136 F.3d 1388, 1395 (10th Cir. 1998)).

We agree that the district court did not abuse its discretion when it found that the evidence of Ms. Redman's marijuana use did not satisfy the Sinclair standard. As discussed above, it was reasonable for the district court to conclude

-18-

that that evidence tended only to impeach Ms. Redman and not to exculpate Mr. Combs. The district court properly denied Mr. Combs's motion.

## C. Exclusion of Witness Testimony

Mr. Combs next contends that the district court erred when it refused to allow Simone Gale, a proffered defense witness, to testify. Ms. Gale is Ms. Redman's cousin and the mother of Mr. Combs's son. On the first day of trial, Ms. Gale was present in the courtroom during both parties' opening statements. After the opening statements, Federal Rule of Evidence 615 was invoked. Rule 615 states, in pertinent part, that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." At some indeterminate time after the invocation of Rule 615, Ms. Gale left the courtroom. Later that night, Ms. Gale told Mr. Combs's counsel that she had information that might be important. According to Mr. Combs's counsel, after meeting with Mr. Combs in his cell, Ms. Gale said to Mr. Combs: "Okay, I'll tell him what I know." Aplt. Combs App. at 172. She then told Mr. Combs's counsel that she had damaging information about Ms. Redman: for example, that Ms. Redman knew the purpose of the trip to New Mexico was to pick up marijuana.

The district court refused to permit Ms. Gale to testify before the jury, stating that it was troubled both by the Rule 615 issue and the potential "prejudicial surprise" to the government caused by the late revelation of Ms. Gale's information. Aplt. Combs App. at 178. Both Mr. Combs and the government apparently agree that the "prejudicial surprise" was based on the district court's interpretation of its "standing pretrial order" or "standing discovery order" requiring parties to exchange lists of witnesses before trial. Both parties refer to this order as a "discovery order." See Aplt. Combs Br. at 16; Aple's Br. (Combs) at 31-35. Mr. Combs argues that it was improper for the court to exclude Ms. Gale either for violating the pretrial order, or for violating Fed. R. Evid. 615. We consider these issues in turn.

**1. Violation of Pretrial Order**

Mr. Combs contends that there could have been no discovery violation in this case because "there was nothing in the Court's discovery order," or in Federal Rule of Criminal Procedure 16, "requiring the defense to disclose its fact witnesses to the prosecution." Aplt. Combs Br. at 16; see also Aple's App. (Combs) at 1-5 (district court's "Preparation For Trial" document). Mr. Combs argues that the pretrial instructions by the district court are "not an order" and are

"not docketed as part of the record in the case." Aplt. Combs Reply Br. at 4. Mr.

Combs states:

> [I]t is Appellant's position that the trial court has no authority under Rule 16 to require the disclosure of the identity of defense witnesses to the government prior to trial. Even if the court did have such power, counsel for Mr. Combs could not have listed Ms. Gale as a witness prior to the trial because he did not know until the evening of the first day of trial that Ms. Gale had information which would make her desirable as a defense witness.

Id.

The government argues that it was within the district court's authority to order the parties to exchange lists of witnesses before trial. It urges that under United States v. Russell, 109 F.3d 1503, 1510 (10th Cir. 1997), "[t]here is no constitutional barrier to trial courts requiring the mutual pretrial disclosure of witnesses." (Citing Taylor v. Illinois, 484 U.S. 400, 410-13 (1988)). Moreover, it says, district courts have long been recognized to have the power "to sanction violations of reciprocal discovery agreements." Id. (citing United States v. Jones, 730 F.2d 593, 596 (10th Cir. 1984)). In the government's view, we should follow the Russell standard in determining whether the witness was appropriately excluded. Russell asks (1) the reason for the delay in disclosing the witness; (2) whether the delay prejudiced the other party; and (3) the feasibility of curing any prejudice with a continuance. Id. at 1510-11 (citing United States v. Wicker, 848 F.2d 1059, 1061 (10th Cir. 1988)). However, these factors "merely guide the

-21-

district court and do not dictate the bounds" of its discretion; the paramount concern is maintaining "the integrity of the judicial process itself." Id. at 1511 (citation omitted). For example, "[e]ven in the absence of prejudice, integrity and scheduling considerations alone may justify suppression of otherwise admissible evidence offered by the delinquent party." Id.

We agree that the test set forth in Russell should apply in this case. As in Russell, this discovery was not governed by Fed. R. Crim. P. 16, but by an agreement assented to by the parties. It is true that, in contrast to the facts in Russell, Mr. Combs apparently did not affirmatively agree to the court's discovery instructions. However, those instructions specifically provide that parties may seek relief, at the discretion of the district court, from the requirement to exchange witness and exhibit lists "[i]n the event this requirement poses a danger to potential witnesses or for other good cause." Aple's App. at 4 (district court's "Preparation for Trial" document). By failing to seek such relief, Mr. Combs tacitly assented to this requirement.

Having found that the test set forth in Russell is appropriate, we turn to the issue of whether the district court's decision to exclude Ms. Gale's testimony was an abuse of discretion. See United States v. Nichols, 169 F.3d 1255, 1267 (10th Cir. 1999). The first Russell factor concerns the reason for the delay in identifying the excluded witness. This factor is not irrelevant merely because the

delay was not the result of counsel's bad faith; under Russell, a court can conclude that a late disclosure was unjustifiable, even if it was not in bad faith. See Russell, 109 F.3d at 1511. Mr. Combs told the trial court that Ms. Gale failed to come forward until after the trial had started because she was afraid of being "implicated in a crime." Aplt. Combs App. at 172 (counsel for Mr. Combs, relating information to the court). The court evidently considered this and found it insufficient to justify the delay, in light of the fact that before trial, Ms. Gale had spoken more than once to Mr. Combs's counsel without revealing that she had any testimony to give. See id. at 175.

The second factor is the potential prejudice to the government. The court assessed this potential prejudice, and found that it was significant. It apparently agreed that if the government had been given an adequate amount of time, it could have attempted to verify a number of details concerning Ms. Gale's testimony, such as whether telephone calls between Ms. Gale and Ms. Redman actually had been made, in order to conduct an accurate cross-examination. See Aplt. Combs App. at 174-78. This was not an unreasonable conclusion.

The district court does not seem to have made any explicit statement as to the third Russell factor, the feasibility of granting a continuance. In United States v. Wicker, we stated that the district court "should" consider all three factors, including the feasibility of granting a continuance, in determining whether to

-23-

impose a sanction. <u>Wicker</u>, 848 F.2d at 1061. This raises the possibility that it was error for the district court not to make a finding regarding a continuance.

However, as in <u>Russell</u>, <u>Wicker</u> also stated that these factors "should merely guide the district court," not "dictate the bounds" of its discretion. <u>Id.</u>; <u>see also</u> <u>Nichols</u>, 169 F.3d at 1268 (stating that the presence of each factor is not "necessarily required to support a sanction."). Here, we note that as in <u>Russell</u>, the trial was already underway. <u>See</u> <u>Russell</u>, 109 F.3d at 1512. Even though the court did not specifically raise the issue of a continuance, it was obviously concerned that the revelation had occurred during trial and did address the timing issue. <u>See</u> Aplt. Combs App. at 173 (statement of the court that "[i]t seems to me the Government could have investigated what [the witness would be] saying and found out whether there are witnesses to counter what she's saying now, but they can't do it in the middle of trial obviously."). In light of this attention to the effects of timing on the parties' ability to conduct an adequate trial, we cannot find that the court abused its discretion by failing to specifically discuss a continuance, or failing to grant one.

Because there was sufficient support for the district court's decision to exclude Ms. Gale's testimony, we hold that it did not abuse its discretion in doing so. <u>See</u> <u>Nichols</u>, 169 F.3d at 1268-69.

## 2. Violation of Fed. R. Evid. 615

Because we have found that the district court's exclusion of Ms. Gale's testimony was adequately based on the Russell factors, we need not reach the alternate contention that it was justified by a violation of Fed. R. Evid. 615. [6]

## D. Apprendi Error

Mr. Combs last asserts error in his sentence of 120 months' imprisonment followed by eight years' supervised release. He contends that this sentence violated Apprendi because no particular quantity of marijuana was charged to the jury and proven beyond a reasonable doubt. In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." See Apprendi, 530 U.S. at 490. Apprendi applies to terms of both incarceration and supervised release. See United States v. Thompson, 237 F.3d 1258, 1262-63 (10th Cir. 2001). Mr. Combs argues that without a finding of quantity, he can only be sentenced under 21 U.S.C. § 841(b)(1)(D), which provides for a sentence of not more than 10 years'

---

[6] We note as well that the district court premised its decision more on the grounds of the prejudicial late disclosure than on the apparent violation of Rule 615. See Aplt's App. at 178.

imprisonment "and with a statutory maximum sentence of 4 years supervised release provided under 18 U.S.C. § 3583(b)(2)." Aplt. Combs Supp. Br. at 5.

However, as the government points out, Mr. Combs actually faced "at least 4 years" of supervised release. See 21 U.S.C. § 841(B)(1)(D) ("Any sentence imposing a term of imprisonment under this paragraph . . . shall, if there was such a prior [felony drug] conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment."). Mr. Combs had a prior felony drug conviction, which survived Apprendi as a basis for increasing a defendant's sentence. See United States v. Dorris, 236 F.3d 582, 587-88 (10th Cir. 2000) (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)). Due to this prior felony, Mr. Combs fell under the "except as otherwise provided" exception to the terms of supervised release specified by 18 U.S.C. § 3583(b). As a consequence, neither Mr. Combs's term of imprisonment nor his term of supervised release exceeded the statutory maxima.

Mr. Combs asks us for "a sentence of less than 10 years incarceration," see Aplt. Combs Supp. Br. at 15 (emphasis in original), but Apprendi does not require us to reverse where a sentence is equal to the statutory maximum. See Apprendi, 530 U.S. at 490 (specifying sentences beyond the statutory maximum as problematic); see also United States v. Thompson, 237 F.3d 1258, 1261-62 (10th

-26-

Cir. 2001); United States v. Jones , 235 F.3d 1231, 1235 (10th Cir. 2000). We hold that there was no Apprendi error in Mr. Combs's sentencing.

## III. BRUCE PAUL WILLIAMS

On appeal, Mr. Williams asserts four errors: that the trial court abused its discretion in excluding Ms. Gale's testimony; that the evidence of Ms. Redman's drug use warranted a new trial; that insufficient evidence existed to support the jury's verdict; and that there was Apprendi error in his sentencing. We consider these contentions in turn.

## A. Exclusion of Witness Testimony

Mr. Williams's objections to the exclusion of Ms. Gale's testimony are similar to those advanced by Mr. Combs. However, as the government points out, Mr. Williams did not join in Mr. Combs's effort to call Ms. Gale as a witness and did not object to her exclusion. See Aple's Br. (Williams) at 20. Because Mr. Williams did not raise these issues at trial, we must review for plain error.

Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, we may exercise our discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation

of judicial proceedings." Jones v. United States, 527 U.S. 373, 389 (1999) (internal quotation marks omitted). We "apply this standard of review with somewhat less rigidity" when a defendant "alleges constitutional error." See United States v. Lindsay, 184 F.3d 1138, 1140 (10th Cir. 1999).

Mr. Williams argues that it was plain error for the district court to exclude Ms. Gale's testimony. However, we need not resolve this contention, because we have already determined that "even reviewed for abuse of discretion," as it was in the case of Mr. Combs, "the decision was not error." See United States v. Gauvin, 173 F.3d 798, 803 (10th Cir. 1999). As Mr. Williams faces a more rigorous standard of review, he cannot prevail on this claim.

## B. Ms. Redman's Drug Use: New Trial

In a footnote to his brief, Mr. Williams "joins in" the argument made by Mr. Combs that the evidence of Ms. Redman's drug use requires a new trial, either because of a Brady violation or on the basis of newly discovered evidence. Aplt. Williams Br. at 37 n.2. In response, the government "incorporates" its own "response to Combs' argument." Aple's Br. (Williams) at 37. In the spirit of this economical briefing, we incorporate our holdings from Parts II(A) and II(B) of this opinion, supra, into our holding here.

## C. Sufficiency of the Evidence

Mr. Williams next alleges that there was insufficient evidence to convict him of the marijuana distribution and conspiracy charges. The sufficiency of the evidence to support a criminal jury verdict is a legal issue that is reviewed de novo. See United States v. Lewis , 240 F.3d 866, 870 (10th Cir. 2001). On appeal, we ask whether, when the evidence (both direct and circumstantial, together with the reasonable inferences to be drawn therefrom) is considered in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. See Hanzlicek , 187 F.3d at 1239.

Mr. Williams states that "[m]ere knowledge of illegal activity . . . does not by itself establish that a person has joined in [a] grand conspiracy," Aplt. Williams Br. at 42; that there is "substantial and significant omission of any evidence reasonably establishing sufficient and substantial evidence of Mr. Williams' participation in a criminal conspiracy," id. at 44; that "[t]here was no evidence that Mr. Williams was involved in the negotiations for or purchase of the marijuana" and that the link between Mr. Williams and the marijuana "is totally dependent on the credibility of the assertions by Allana Redman," id. at 48; and that "the government's evidence merely creates general suspicion at best," id. at 49.

The government responds that there was ample evidence upon which to premise the jury's findings. For example, it notes Ms. Redman's testimony that she traveled with Messrs. Williams and Combs from Washington, D.C. through New Orleans to New Mexico; that Mr. Williams rented an additional car with Mr. Combs; that Mr. Williams directed her to rent several different hotel rooms as they moved around Las Cruces, New Mexico; that she found marijuana in the suitcases of both Mr. Williams and Mr. Combs; and that Mr. Williams was using a false driver's license. To corroborate this testimony, the government also produced at trial a car rental agreement showing that Mr. Williams was an authorized driver of the car in which the marijuana was found, several hotel or motel receipts in Mr. Williams's name, and phone records showing that Ms. Redman had placed a call to her mother, consistent with testimony given by Ms. Redman that she had called her mother collect from New Mexico after discovering the marijuana .

Considered in the light most favorable to the government, we hold that this evidence does "more than raise a suspicion of guilt" and was adequate to support the jury's guilty verdict against Mr. Williams.    United States v. Anderson , 189 F.3d 1201, 1205 (10th Cir. 1999) (internal quotation marks omitted).

**D. Apprendi Error**

-30-

Mr. Williams's final argument is that his sentence violated _Apprendi_. Like Mr. Combs, Mr. Williams had previously been convicted of a felony drug offense. Like Mr. Combs, Mr. Williams was sentenced to 120 months' imprisonment and 8 years' supervised release. Neither term was longer than the maxima under 21 U.S.C. § 841(b)(1)(D) for an individual with a prior felony drug conviction. We therefore hold that there was no _Apprendi_ error in Mr. Williams's sentencing.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the conviction and sentence of Omar Combs, and we AFFIRM the conviction and sentence of Bruce Paul Williams.