**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DUANE SMITH,

    Defendant-Appellant.

No. 01-3292
(D. Kan.)
(D. Ct. No. 00-CR-10151-01-WEB)

---

## ORDER AND JUDGMENT[*]

---

Debra L. Barnett (Eric F. Melgren, United States Attorney, with her on the brief), Assistant United States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

Kurt P. Kerns of Ariagno, Kerns, Mank & White, LLC, Wichita, Kansas, for Defendant-Appellant.

---

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **OBERDORFER**, District Judge.[**]

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Louis F. Oberdorfer, United States District Court Judge for the District of Columbia, sitting by designation.

A jury convicted Mr. Duane Smith of bank fraud in violation of 18 U.S.C. § 1344. Mr. Smith appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment and sentence of the trial court.

Mr. Smith conducted a fairly typical check kiting scheme. He operated two businesses: Cwik Truck and Auto Sales, and B & L Auto Auction. Mr. Smith opened a checking account for Cwik Truck at First National Bank in Liberal, Kansas. He also opened a checking account for B & L Auto at Prairie State Bank in Maize, Kansas.[1] Mr. Smith was a signatory on both accounts, and his son was a signatory on the B & L Auto account. During the relevant time period, Mr. Smith's son would write checks payable to Cwik Truck on the B & L Auto account. Mr. Smith would deposit these checks in the Cwik Truck account. Mr. Smith would then write checks payable to B & L Auto on the Cwik Truck account to cover the checks his son wrote on the B & L Auto account. His son would deposit these checks in the B & L Auto account. Mr. Smith did not have money in his accounts to cover the checks. This process of check swapping continued over a period of time. Using the inflated balances in these accounts, Mr. Smith paid his financial obligations to third parties. When the scheme ended, Prairie

_____

[1] Both banks were insured during the relevant time period by the Federal Deposit Insurance Corporation.

State Bank lost over $700,000 on the B & L Auto account. First National Bank did not suffer any loss.

A jury convicted Mr. Smith of bank fraud for his participation in this check kiting scheme. *See* 18 U.S.C. § 1344. On appeal, Mr. Smith argues (1) the trial court compelled him to testify at trial; (2) the trial court improperly limited his testimony; (3) the testimony of a government witness "impermissibly invaded the province of the jury"; (4) jury instruction 17 was not consistent with the bank fraud statute; and (5) the trial court did not consider Mr. Smith's family circumstances which may have justified a downward departure from the relevant sentencing guideline range.

## I. Compelled Testimony

Mr. Smith first argues a trial court ruling "compelled [him] to testify in order to present evidence of his intent to defraud in violation of his right against self-incrimination." Mr. Smith did not object to this ruling. We therefore review it for plain error, applying this standard with "'less rigidity'" to Mr. Smith's constitutional challenge. *United States v. Combs*, 267 F.3d 1167, 1181 (10th Cir. 2001) (quoting *United States v. Lindsay*, 184 F.3d 1138, 1140 (10th Cir. 1999)).

Prior to trial, Mr. Smith informed the court that he desired to show he did not have "one iota of intention of defrauding anybody" by presenting evidence of past investments and his belief "that these investments will result in income sufficient to repay any losses incurred by financial institutions." The government moved in limine to exclude this evidence because it was "irrelevant" and "immaterial" to the charges in the indictment. The trial court ruled Mr. Smith will "be able to testify as far as I'm concerned. The defendant can practically testify to anything he wants to." However, the court also stated that if Mr. Smith tried "to bring [the evidence] in by any other means without his testimony, I would have trouble with relevance." Mr. Smith now asserts that by so ruling, the trial court forced him "into a position where he was compelled to testify in order to present his defense."

It is basic law that "[r]equiring the accused to choose between complete silence and presenting a defense does not violate the accused's constitutional rights." *United States v. Simpson*, 7 F.3d 186, 190-91 (10th Cir. 1993). "While the Fifth Amendment guarantees the right of the accused not to be compelled to testify, it does not guarantee that the accused will not be placed in a situation where he feels he must testify or risk conviction." *Id.* at 190.

In the case before us, the record is clear and uncontroverted that Mr. Smith's counsel represented to the trial court Mr. Smith would testify at trial prior to the trial court's ruling on the government's motion in limine. Consequently, we conclude the record does not support Mr. Smith's assertion he was somehow compelled to testify.

## II. Limited Testimony

Mr. Smith next argues the trial court "violated [his] right to Due Process and the right to present a defense" by "forcing [him] to testify in order to present evidence of his intent and then limiting [his] testimony regarding his intent." We review the trial court's evidentiary rulings for an abuse of discretion. *See United States v. Snow*, 82 F.3d 935, 940 (10th Cir. 1996). Even if the trial court abused its discretion, however, we will not reverse where an error constitutional in nature is "harmless beyond a reasonable doubt." *Id.*

Mr. Smith identifies two separate trial court rulings as limiting his testimony. We have already rejected for lack of record support Mr. Smith's argument the trial court compelled him to testify. We reject for the same reason Mr. Smith's argument the trial court limited his testimony.

The first trial court ruling occurred during Mr. Smith's testimony that he intended to pay the money back to Prairie State Bank. When Mr. Smith's attorney asked Mr. Smith "what was the source of this money from what you were going to pay this back," the government objected.

Government: I'm going to object again, Your Honor, as irrelevant.

Defense counsel: Your Honor, specifically if I may.

The Court: Yes.

Defense counsel: It goes directly to his intent if he had intent to pay the money back the source of that.

The Court: Well, he can say what he intended to do, but I don't think it has – I don't know how that's going to show his intent. He can tell what his intent was. It's his testimony, but I don't know that that has anything to do with what it was.

Defense counsel: So –

The Court: So he – what he intended as a witness he can testify to.

Defense counsel: All right.

As the above excerpt demonstrates, the record does not support Mr. Smith's argument the trial court limited his testimony. The trial court allowed Mr. Smith to testify of his intent, including the source of the income he planned to use to cover the checks he wrote. For example, Mr. Smith testified he knew there were insufficient funds in his account to cover the checks, but he "had some investments that people owe me, and they promised to pay, and I was supposed to

-6-

get money anyway." He testified about these investments and their value. Mr. Smith testified he informed bank officials about these investments. He also introduced (and the court admitted) an exhibit that detailed his conversation with a bank officer about these investments. And, finally, his wife corroborated his testimony by testifying Mr. Smith received numerous telephone calls from people associated with his investments.

The second trial court ruling Mr. Smith contests occurred during his testimony that he informed a bank official of his intent to repay the money. When Mr. Smith's attorney asked Mr. Smith to estimate "the value of any investment or stream of income that was supposed to cover these checks," the government again objected.

Government: Objection, Your Honor, immaterial and irrelevant.

Defense counsel: Again, Your Honor, I say it goes to his intent.

Government: It's speculation, Your Honor.

The Court: Well –

Defense counsel: If I may, sir.

The Court: Yes.

Defense counsel: This is the very same question that [the government] asked [of a witness] ... yesterday.

Government: Your Honor, I asked about in that case [sic] [the

witness] could actually see in the records. I didn't ask him to speculate about income of the business or what might happen in the future.

Defense counsel: That's true. I still think it goes to his intent.

The Court: Well, he can testify as to assets that he had if they were listed in a financial statement or anything like that where he was – I'll let him testify about it.

Defense counsel: I think the judge has almost asked a question. If not I'll ask it. Did you ever list these assets in a financial statement?"

Mr. Smith then testified about the assets he had listed in a financial statement and their value. He never indicated there were other assets about which he wished to testify. He made no offer of proof and did not introduce any exhibits that were refused. In addition, he did not call any witnesses affiliated with his investments to testify about these investments. Once again, we conclude the record simply does not support Mr. Smith's argument the trial court limited his testimony.

### III. Testimony of Intent

Mr. Smith next argues a government witness's "characterization of 'check kiting as a systematic scheme to defraud' impermissibly invaded the province of the jury by concluding that because Mr. Smith had check kited, he had the requisite intent to defraud." Mr. Smith also argues the witness's testimony violates Rule 704 of the Federal Rules of Evidence. We review this issue under

-8-

the plain error standard discussed above because Mr. Smith did not object to the expert's testimony at trial. *See Combs*, 267 F.3d at 1181.

Mr. Smith's arguments rest upon the following excerpted testimony of a government witness – a special agent of the Federal Bureau of Investigation with extensive experience on check kiting matters. The prosecution asked the following question, without objection by defense counsel:

> Prosecutor: Would you please explain to the jury and the Court what you mean by check kiting or check swapping?
>
> Witness: Yes. Check kiting is a systematic scheme to defraud where nonsufficient funds checks are cross deposited between or traded between two or more checking accounts, and this is done to artificially inflate the account balances, and this is accomplished through the flow time in the banking system.
>
> Once account balances are artificially inflated, checks that would normally be returned for nonsufficient funds are, in fact, paid or honored by the issuing banks.

The witness did not testify that "Mr. Smith had check kited." Nor did he testify Mr. Smith "had the requisite intent to defraud." These issues were clearly left for the trier of fact alone. Merely characterizing "check kiting" as a scheme to defraud does not impermissibly invade the province of the jury or violate Fed. R. Evid. 704. As with Mr. Smith's previous arguments, we conclude his objections to this witness's testimony lack record support.

## IV. Jury Instruction

Mr. Smith also argues "the inclusion of the word 'defraud' in two of the elements of the offense listed in [jury] instruction 17 does not correctly reflect the language of 18 U.S.C. § 1344(1)." He claims this error violates his "right to Due Process under the Fifth Amendment and right to a jury trial under the Sixth Amendment." Once again, Mr. Smith failed to raise this issue at trial, and we therefore review it under the plain error standard previously discussed. *See Combs*, 267 F.3d at 1181.

As discussed above, the government filed an indictment charging Mr. Smith with bank fraud under 18 U.S.C. § 1344. The jury instruction discussing this charge reads in pertinent part:

> Count 1 charges defendant Duane Smith with a violation of Section 1344(1) of Title 18 of the United States Code. That section provides in part that, "Whoever knowingly executes, or attempts to execute, a scheme or artifice to defraud a financial institution" shall be guilty of an offense against the United States.

> Before the defendant may be found guilty of [this] offense ..., the government must prove the following essential elements beyond a reasonable doubt:

> First: That the defendant Duane Smith knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution as alleged in Count 1;

> Second: That the defendant did so with intent to defraud; and

<u>Third</u>:  That the financial institution was then insured by the Federal Deposit Insurance Corporation.

Mr. Smith believes this jury instruction blurs "the line between establishing that a scheme existed and establishing that the accused had the intent to defraud."  We disagree.  This instruction correctly identifies the elements of an 18 U.S.C. § 1344(1) violation as we defined them in *United States v. Hill*, 197 F. 3d 436, 444 (10th Cir. 1999).  We see no error in the instruction as given.

## V.  Sentencing

Finally, Mr. Smith argues the trial court "failed to consider the extraordinary family circumstances which may have justified a downward departure."  He believes the trial court should have departed downward so he could care for his family.

We cannot review, however, the sentencing court's refusal to depart downward from the sentencing guidelines.  *See United States v. Castillo*, 140 F.3d 874, 887 (10th Cir. 1998).  We lack jurisdiction.  *Id*.  *See also* 18 U.S.C. § 3742(a).

-11-

Mr. Smith nonetheless argues we may review the court's refusal in this case because the court "unambiguously concluded that it had no legal authority to [depart downward]." Although we may review a sentencing court's refusal to depart downward when its refusal is based on an erroneous and unambiguous statement it does not have the authority to depart, *see United States v. Miranda-Ramirez*, 309 F.3d 1255, 1258-59 (10th Cir. 2002), *cert. denied*, 123 S. Ct. 1380 (2003), this is not such a case.

At the sentencing hearing, the court heard testimony from Mr. Smith and Mr. Smith's daughter about Mr. Smith's family circumstances. The court then stated: "The Court will do what it has to do under the law. Thank you very much for your help." Mr. Smith believes this is an "unambiguous" statement reflecting the sentencing court's conclusion it did not have the ability to depart. We disagree. This statement does not indicate the court believed it lacked the legal authority to depart "for the entire class of circumstances proffered by the defendant." *Castillo*, 140 F.3d at 887. Even assuming the statement is ambiguous as to this issue, we still must treat it "'as though the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart.'" *Miranda-Ramirez*, 309 F.3d at 1258-59 (quoting *United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir. 1999)). We therefore

-12-

lack jurisdiction to review the court's refusal to depart downward in this case.

## Conclusion

For the reasons discussed above, we **AFFIRM** the judgment and sentence of the district court.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge