**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

LONNIE LONTESE BOWLER,

      Defendant-Appellant.

No. 10-6118
(D.C. No. 09-CR-00267-R-1)
(W. Dist.of Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, HOLLOWAY** and **LUCERO**, Circuit Judges[**]

---

Defendant-Appellant Lonnie Lontese Bowler[1] brings this direct criminal appeal in

which he challenges only the sentence imposed by the district court. Mr. Bowler was

sentenced to fifteen years' imprisonment after the district court had determined that his

criminal history made him subject to that term as a mandatory minimum under the Armed

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

[1] The record includes documents with other spellings of Mr. Bowler's middle name. For consistency, we use the spelling that appears in the district court record.

Career Criminal Act (ACCA). This appeal challenges that determination by the district court. Our jurisdiction is based on 28 U.S.C. § 1291, and our review is guided by 18 U.S.C. § 3742(e) & (f).

**I**

On April 3, 2009, Mr. Bowler lost control of the car he was driving and crashed into a roadside barrier. An Oklahoma Highway Patrol trooper investigated the accident and, based on his observations at the scene, arrested Mr. Bowler for driving under the influence of alcohol. A loaded pistol was found in the subsequent search of Mr. Bowler's car. Mr. Bowler admitted that the gun was his and that he had previously been convicted of a felony. He was later indicted by a federal grand jury on one count of possession of a firearm after a former felony conviction, a violation of 18 U.S.C. § 922(g)(1).

Mr. Bowler pleaded guilty to the charge without benefit of a plea agreement. The presentence report (PSR) showed that Mr. Bowler had a number of juvenile offenses, beginning with a deferred sentence arising from a burglary committed when Mr. Bowler was ten years old. We need not recite all of the offenses in the record but will note the two that are relevant to this appeal. In December 1992, Mr. Bowler was adjudged delinquent after having pleaded guilty to two offenses, one that he committed while he was still eleven and one that he committed just days after his twelfth birthday. The second of those offenses is discussed at some length below. For now, we note that the PSR reflected that Mr. Bowler had pleaded guilty to assault and battery with a dangerous weapon.

In April 1993, Mr. Bowler was again adjudicated delinquent based on his guilty plea to the offense of manufacturing an explosive device. The conduct on which that adjudication was based had occurred in June 1992, when Mr. Bowler was eleven years old. As we shall discuss, either one of these two adjudications – for assault and battery with a dangerous weapon or for manufacturing an explosive device – when combined with two qualifying adult convictions may put Mr. Bowler in the category of an armed career criminal, thus requiring the mandatory prison term imposed by the district court. The ACCA does not permit courts to consider Mr. Bowler's extremely youthful age at the time of the juvenile offenses.

We need not list details of seven subsequent juvenile offenses but note that one was for first-degree robbery. Among Mr. Bowler's adult convictions are some apparently minor offenses but also a drug offense, a conviction for robbery in the first degree (committed when he was seventeen years old), and one for domestic abuse by strangulation.

The PSR concluded that the advisory guidelines range was 151 to 188 months. More importantly for our purposes, the PSR also concluded that the ACCA required the mandatory minimum sentence of fifteen years based on two of the prior adult convictions – robbery in the first degree and domestic abuse by strangulation; and two of the juvenile adjudications – manufacturing an explosive device and assault and battery with a dangerous weapon.

During the sentencing proceedings, counsel for Mr. Bowler challenged the use of

the two listed juvenile adjudications as predicate offenses for application of the ACCA's mandatory minimum sentence. The district judge rejected the arguments and sentenced Mr. Bowler as recommended in the PSR. On appeal, Mr. Bowler again challenges the determination that the two juvenile adjudications qualified as predicate offenses and mandated the fifteen-year sentence.

## II

Mr. Bowler's appellate arguments raise issues of statutory construction which we review *de novo*. The statute under which he was sentenced provides in pertinent part:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

> (2) As used in this subsection –

> . . . .

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –

> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

> (C) the term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

-4-

18 U.S.C. § 924(e).

## A

Mr. Bowler does not dispute that the two specified adult convictions were "violent felonies" within the meaning of the statute. Because the fifteen-year sentence is the mandatory minimum for any defendant with three qualifying convictions, if either one of the juvenile offenses was properly counted, then the sentence must be affirmed. The issue, then, is whether one of the two juvenile offenses was a "violent felony" within the meaning of the statute. We first address the assault and battery with a dangerous weapon charge and conclude that it was not shown to come within the ACCA's definition of a violent felony.

Although common sense might seem at first blush to resolve this question – assault and battery with a dangerous weapon certainly sounds like a violent crime – our inquiry must go deeper. As quoted *supra*, the statute provides that a juvenile offense counts as a "violent felony" only if it is one "involving the use or carrying of a firearm, knife, or destructive device" (and if the offense meets other criteria as well, ones which we need not repeat as they are not at issue before us). We turn, then, to the statute proscribing assault and battery with a dangerous weapon.

The Oklahoma law applicable at the time to that crime provided:

> Every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although

-5-

> without the intent to kill such person or to commit any felony, upon conviction is guilty of a felony . . . .

21 Okla. Stat. § 645 (1991). Under that statute, a dangerous weapon could be metal "knucks," *Reardon v. Oklahoma*, 51 Okla. Crim. 432, 2 P.2d 100 (1931), or a beer bottle, *Bald Eagle v. Oklahoma*, 355 P.2d 1015 (Okla. Crim. App. 1960). Thus it is obvious that the statute does not require, as an element, the use of a firearm.

Mr. Bowler's challenge focuses on how the district court reached its determination that the juvenile adjudication nevertheless involved the use of a firearm. This is a legal question, not a question of fact, because of the limited nature of the inquiry the court is to undertake:

> In addressing that argument and determining whether a prior conviction falls under the ACCA, we apply a categorical approach, generally looking only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether *the elements of the offense* are of the type that would justify its inclusion within the ACCA, without inquiring into the specific conduct of this particular offender.

*United States v. West*, 550 F.3d 952, 957 (10th Cir. 2008) (internal citations and quotation marks omitted; emphasis in original). This categorical approach will not suffice in this case, however, because it is clear that the Oklahoma statute which forbids assault and battery with a dangerous weapon does not require the use of a "firearm, knife, or other destructive device" as the ACCA requires.

When, as here, a criminal statute encompasses conduct within the ACCA's definition of "violent felony" and also conduct that would not satisfy the definition, then

we employ a modified categorical approach. *Id.* Using that approach with a prior conviction obtained by way of a guilty plea, as was the conviction we deal with here, we may refer to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

We must determine what judicial records from the juvenile adjudication may inform our inquiry. The original charging document, which carries the generic label of "Petition" and which is the only one in our record, alleges that Mr. Bowler had committed the offense of shooting with intent to kill in violation of 21 Okla. Stat. § 652.

The disposition of the case, however, came upon the filing of a document, signed by Mr. Bowler, his mother, his attorney, the state's attorney and the judge. That document is styled "Summary of Facts[:] Stipulation to Delinquent Petition." In that document (Stipulation), Mr. Bowler stated that he was charged with the felony of assault and battery with a dangerous weapon. The government's position on appeal – its only argument that the sentence can be affirmed based on this assault and battery with a dangerous weapon adjudication – is that Mr. Bowler admitted in this Stipulation that he committed the delinquent act charged in the Petition. And the Petition charged that Mr. Bowler and another "acting jointly, intentionally and wrongfully shot" a named victim with a specifically described pistol and "with the intent to kill . . . ." This was the basis for the district court's ruling that the adjudication qualified as a violent felony under the

ACCA.

If we were persuaded by that argument, we would need go no further because such an admission is the type of record that courts are to consider in the modified categorical analysis. But the admission on which the government relies is by no means clear. Further examination of the Stipulation shows ambiguity.

First, we note that the admission on which the government relies is contained in paragraph 11 of the Stipulation, which is a pre-printed, form document with blanks filled in by hand. The pre-printed part of paragraph 11 asks: "Do you understand that by stipulating to the petition you are admitting you did the delinquent act alleged?" The hand-written response is: "Yes." But there is no specific reference to the original Petition in the document. Instead, the paragraph immediately preceding this admission refers not to the original charge of shooting with intent to kill but to the charge of assault and battery with a dangerous weapon. Paragraph 10 of the pre-printed form asks: "Do you understand that you are charged with a delinquent act which if committed by an adult would be the felony/misdemeanor act of" with a blank space left for description of the charge. The response includes a circling of "felony" in the pre-printed question and this statement: "A & B w/ Dangerous Weapon, and Breaking and Entering."[2]

Later in the Stipulation there is a question whether there has been an agreement about the disposition of the case and, if so, "what is the agreement?" The hand-written

_____

[2]The breaking and entering charge was based on different conduct but resolved in the same disposition. It is not relevant to the issue we address.

response here states, in pertinent part: "92-2220 amended to A & B w/ dangerous weapon." The reference to 92-2220 is clearly to the Petition that charged shooting with intent to kill. But how was 92-2220 amended? The record is silent but for a statement by Mr. Bowler's counsel at sentencing in the federal district court that there was no amended charge. III R. 12. The basis for that statement is not explained.

We faced a very similar situation in *United States v. Bennett*, 108 F.3d 1315 (10th Cir. 1997). In the prior proceeding that was at issue in that case, Mr. Bennett had originally been charged with first-degree burglary of a dwelling house, a charge that we said clearly fit the applicable definition of "crime of violence."[3] But Mr. Bennett had pleaded guilty to the reduced charge of second-degree burglary, which under Oklahoma law is not limited to burglaries of dwellings. In that case, as in this one, our record did not have the amended charging document which might have shed additional light on the circumstances of the prior case. Noting the possibility that Mr. Bennett had pleaded to an offense that did not fit the definition of crime of violence, we said that this meant that the government had not met its burden of proving the sentence enhancement it sought. 108 F.3d at 1319.

This case is not distinguishable from *Bennett* in any meaningful way. Here the

_____

[3]The sentence enhancement at issue in *Bennett* was not the one at issue here. Rather, Mr. Bennett had been sentenced as a "career offender" pursuant to United States Sentencing Guidelines § 4B1.1. 108 F.3d at 1316. That enhancement provision used the term "crime of violence" rather than "violent felony." Nevertheless, because the modified categorical approach applies in the same way, we conclude that *Bennett* is relevant precedent for applying that approach here.

Stipulation strongly suggests that Mr. Bowler was pleading to an amended petition not in the record, and not to the original Petition that appears in our record. Here, as in *Bennett*, we may not speculate as to the content of any amended petition. *See id.* at 1318 ("even knowledgeable speculation should not be added" to the analysis). Here, as in *Bennett*, we cannot overlook the possibility that the defendant pleaded to an offense that did not fit the description required by the sentencing enhancement measure at issue. Here, as in *Bennett*, the government therefore failed to carry its burden of proof that the sentencing enhancement was appropriate.

The district court erred by basing its ruling on the *assumption* that Mr. Bowler had admitted doing the acts alleged in the original Petition (shooting with intent to kill) in disregard of the facts we have noted that cast grave doubt on that assumption. Mr. Bowler did not admit that he was guilty of shooting with intent to kill, and it is unclear what underlying facts, if any, were admitted because of the ambiguities in the Stipulation that we have set out *supra.*

**B**

As we have noted, however, we must still affirm the sentence if the other juvenile adjudication on which the government relies was shown to be for a violent felony within the meaning of the statute. That adjudication was for the offense of manufacturing an incendiary device with the intent to kill or injure another or to damage the property of

another.[4]  In this case, we have no problem with an amended charge.  Nor is there any ambiguity in the "Summary of Facts [:] Stipulation To Delinquent Petition," which is on the same printed form as the Stipulation just discussed.  The only question then, is whether the acts alleged in the Petition and admitted in the Stipulation bring that offense within the coverage of the ACCA.

As quoted, *supra*, the ACCA's definition of "violent felony" includes "any act of juvenile delinquency involving the use or carrying of a . . . destructive device" that would be punishable by more than one year in prison if committed by an adult.  Comparing that language with the language of the Petition in question, we see that the Petition does not allege "use" or "carrying" of a destructive device.  The Petition charged Mr. Bowler (and another) with "manufacturing an incendiary device" and alleged that the two juveniles did so "with the intent to kill, injure or intimidate a person, or damage the real or personal property of another . . . ."  Assuming *arguendo* that an "incendiary device" is a "destructive device" within the meaning of the ACCA, we still have the problem that the Petition does not allege the "use or carrying" of the device.  Although this was brought to the district judge's attention by the argument by counsel for Mr. Bowler, the judge in his oral ruling did not specifically address the point, saying only that "[c]learly, the statute is

---

[4]The Petition cites 21 Okla. Stat. § 1767.  No such statute existed at the time, a substantial impediment to our task of reviewing the elements set out by the statute.  The district judge found that this was simply due to a typographical error, and the language of the Petition does track closely the language of 21 Okla. Stat. § 1767.1(A)(4) (1991), as the district judge noted.  Given our disposition of this issue, we need not reach the propriety of the district court's assumption.  We caution, however, that making assumptions in this area is fraught with peril, as we discussed in *Bennett*.

a charge that qualifies under the ACCA." We must respectfully disagree with the district judge because as we have noted, the language of the presumptively applicable Oklahoma statute does not on its face qualify under the ACCA because it does not require the use or carrying of the device.

The government contends that the ACCA requires only that the juvenile adjudication *involve* the use or carrying of the destructive device, not the actual use or carrying of the device. The government relies on *United States v. Nevels*, 490 F.3d 800, 808 (10th Cir. 2007), but the government's attempt to apply the holding and language of that case to the instant case stretches past the breaking point. In that case Mr. Nevels had committed two aggravated robberies at age eleven which were charged in a single petition. In both counts, our court noted, it was alleged that Mr. Nevels and another had committed robbery by "use of force, threats and intimidation with a deadly weapon, to-wit: GUN" and thereby had put the victim "in reasonable fear of death." 490 F.3d at 807.

On appeal, Mr. Nevels argued that those adjudications should not have been used as a predicate for the ACCA enhancement unless the district court determined that Nevels, and not his companion, had carried or used the gun and that the gun had actually been involved during the crimes. We first noted that the determinations that Mr. Nevels contended should have been made were factual determinations that are outside the scope of, and so in fact forbidden by, the modified categorical analysis we employ to decide these issues. *Id.* at 808. The language the government quotes in its brief came after that

-12-

explanation. We said that even if the district court did not believe that Mr. Nevels himself had carried or used the firearm, "the ACCA only requires the juvenile [adjudication] to '*involv[e]* the carrying or use of a firearm'" – it does not require the defendant to [have] personally carr[ied] or use[d] the firearm if the weapon was otherwise 'involved' in the act." *Id.* (first alteration in original).

Here, the charging document alleges *only* that Mr. Bowler "manufactured" an incendiary device. There is no allegation that he or his companion actually intimidated someone with the device. To hold that this language satisfies the statutory requirement of "involving the use or carrying" of such a device would effectively delete the words "use" and "carrying" from the statute. The government in effect asks us to assume that the device was used or carried. This would plainly be improper in this criminal case.

A recent decision from another circuit provides illuminating contrast for analysis of the statutory language at issue. In *United States v. Wright*, 594 F.3d 259, 265-67 (4th Cir.), *cert. denied*, 131 S.Ct. 507 (2010), the defendant had three prior juvenile adjudications for burglary, and in each case he had stolen a firearm. On appeal from his sentence under the ACCA, Mr. Wright argued that he did not "carry" the firearms by stealing them. In rejecting his argument, the court in that case noted that a "burglary that results in the theft of firearms necessarily involves carrying them, else the burglar would be forced to leave his spoils at the scene of the crime." *Id.* at 266. The court went on to note that the term "carry" as used in section 924(c)(1) "requires knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." *Id.*

(quoting *United States v. Mitchell*, 104 F.3d 649, 653 (4th Cir. 1997)).

In contrast, one can manufacture a destructive device without moving, conveying or transporting it. The offense would appear to be complete once the device was made or assembled, whether or not Mr. Bowler and his companion ever removed it from the place of manufacture. And the record here provides no evidence that the device had been removed from its place of manufacture.

Nor is it logical to contend that manufacture of a destructive device inherently involves its use. In the first place, if Congress had intended the statute to reach manufacture or possession of a destructive device without any additional act, then surely Congress knew how to express that intention. We do not presume Congress to have added words with no meaning. Following that principle of statutory interpretation, the Supreme Court unanimously held in construing the verb "use" in another subsection of section 924 that a standard that would find "use" to have been established "in almost every case by evidence of mere possession does not adhere to the obvious congressional intent to require more than possession to trigger the statute's application." *Bailey v. United States*, 516 U.S. 137, 144 (1995).[5] We decline the government's suggestion to ascribe to "involving the use of" a meaning that would require no more than manufacture or possession. Instead, like the Supreme Court in *Bailey*, we conclude that such a construction would establish a standard that would be satisfied in almost every case by

---

[5]*Bailey* was superseded by statute as we noted in *United States v. Sanders*, 26 Fed. Appx. 802 (2001). We do not think that this in any way undermines the analysis of the unanimous Court in its construction of the language of the statute before amendment.

mere possession (or manufacture), despite the obvious congressional intent to require more than that.

**C**

In conclusion, we find on careful examination of the record that the government did not meet its burden of showing that either of the juvenile adjudications was for a "violent felony" within the meaning of the ACCA. The district court's holding that the fifteen-year sentence was mandated by the ACCA was therefore error.

Accordingly the sentence is reversed and the matter is remanded to the district court for sentencing without application of the mandatory minimum provision of the ACCA.

**IT IS SO ORDERED**.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge